Dr. Conard D. MOORE et ux., Appellants,

v.

Preston M. BOLTON, Appellee.

No. 616.

Court of Civil Appeals of Texas, Houston (14th Dist.).

May 17, 1972.

Rehearing Denied June 7, 1972.

George M. Bishop, Tipton, Bishop & Co., Houston, for appellants.

John A. Murray, Jr., Ramsey & Murray, Houston, for appellee.

SAM D. JOHNSON, Justice.

This is a suit which was brought by an architect, Preston M. Bolton, for architectural services in connection with the preparation and plans for a new home which was to be built by the defendants, Dr. and Mrs. Conard D. Moore. Trial was to a jury and upon special issue findings the district court of Harris County rendered judgment for the architect that he recover for such services and reasonable attorney's fees.

The original contract between these parties was one to remodel an older residence owned by the Moores in the City of Houston and was on an hourly basis. The construction bids on this project proved too great and the defendants decided to raze the existing house and to build a new house on the lot. A completely new agreement was undertaken and reached by the parties for the construction of the new house. Under the new agreement the architect was to be paid a fee of 10% of the total cost of construction which was the standard or recommended Texas Society of Architects' fee. Of this figure the final 20% was allocated for supervision of the actual construction. The initial 80%, however, was allocated to the various phases

of design, design development, and construction document completion. The architect testified that the Moores were in a hurry and wanted him to go right ahead with the work. His conversations with the Moores proceeded relative to the space requirements, rooms and the other considerations relative to the house plans which he was authorized to prepare.

On January 5, 1968, a letter was written by the architect which encompassed what he understood to be their agreement. The letter was addressed to Dr. Moore and contained the request that it be signed by him and returned to the architect if it was his understanding of the agreement. The letter specified the 10% total cost of construction figure but contained no construction cost limitation. The letter was never signed or returned to the architect. It was Dr. and Mrs. Moore's contention in the trial court, and here, that there was a $75,000 cost limitation on the project and that the letter was not signed and returned because such construction cost limitation was not expressed in the letter. Mrs. Moore, who had practically all of the contacts with the architect, testified that she never mentioned the letter to the architect after receiving it in the mail at her home. Dr. Moore testified that though he did not sign and return the letter because there was no cost limitation included in it, he did not communicate this to the architect and let him go ahead with the work.

The architect did fully proceed with the work both before and after the date of the letter. There were numerous conferences and conversations relative to the plans and what was to be incorporated therein, the style of architecture, appearance, building materials, composition, arrangement, etc. The design and draftsmanship of the plans proceeded with these conferences and conversations through the ensuing months.

As this time passed the architect sent monthly statements for partial architectural services to the Moores all of which made specific reference to the letter contract of January 5. The first two of these

were paid by the Moores and the third, in April, was not paid because it coincided with the Moore's income tax payment period. The payments were to be continued after April, however. The monthly billings were based upon an approximate cost of $75,000. The record shows that for billing purposes only the architect bills at an approximate and reduced figure until the final figures are received from the contractor and a final price is reached.

When the preliminary plans were completed they were submitted to a builder who estimated it would be possible to build the house for $75,200. This figure was contingent, however, on some thirty-five changes or deletions in the plans as they then existed. This fact was communicated to the Moores and gone over in detail with Mrs. Moore. The architect was instructed to continue with the drawings. The preliminary plans were then used by Dr. Moore in obtaining a loan commitment. Dr. Moore testified that the loan commitment was in the sum of $75,000 and that he communicated the fact that he had obtained a commitment in this sum to the architect. On cross-examination, however, he testified that he was "sure he (the architect) knew this" but that he had neither personally told nor phoned him nor written him a letter about it.

The record reflects a continuation of the work by the architect at the insistence of the Moores and with their cooperation. Much of the conversation and work on the plans was concerning the desires of Mrs. Moore as to what was to be, or must be, included in the house. It also seems apparent that the architect made every effort to include all of the items specified by Mrs. Moore even though they necessarily would increase the total cost of construction. The Moores were advised of this fact in writing. Upon being so advised Mrs. Moore responded she would worry about price later. Of the thirty-five features which must have been changed or deleted to keep the house in the general range of $75,000 figure it does not appear

that any significant part was acquiesced in or agreed to by Mrs. Moore.

After the plans were completed by the architect Mrs. Moore was, according to testimony in the record, happy with the house. The plans were submitted to various contractors for bids. As submitted, the lowest bid was for $108,219. The Moores did express disappointment at the size of the bids. Nevertheless, conversations between the Moores and the low bidder followed relative to the building contract and the contractor testified that a firm agreement was reached with the doctor on the $108,219 figure. The final papers to this effect were prepared but they were never executed. The contractor testified that the simple reason that the building contract between Dr. Moore and himself was not consummated was that the doctor was unable to get his financing. It was during this period that the contractor moved building machinery on the lot and even did some minor preliminary work on the building site. Negotiations terminated, however, and the house was never built. Of particular significance is the fact that during all the foregoing sequence of events, at no time did the Moores request the architect to stop work on the plans or give any indication or expression that it was their desire that he do so. Quite to the contrary, it appears that throughout all of the time during which the architect was performing his services that the Moores cooperated and worked with him.

The instant suit was brought by the architect for his fee, that is, 10% of the construction costs less 20% of that figure which was applicable to the supervision of construction, which was not performed, and attorney's fees. The trial court rendered judgment for the architect, based on the jury's verdict, for $7,669.98 and also for attorney's fees in the sum of $2,000.

The Moores' basic contention is that the construction costs, according to their oral agreement, could not exceed $75,000 and since the costs exceeded such amount they were not obligated to pay for such. In other words, the Moores contend that the payment to the architect for his architectural service was conditioned upon the building of the house, to their specifications, at a cost of no greater than $75,000. The Moores apparently do not (and did not in the trial court) contest the fact that the letter of January 5th contained the essence of the contract between the architect and themselves, except however, that it omitted the agreed-upon construction cost limitation. The architect, on the other hand, asserts that the $75,000 sum was mentioned merely as a budget figure but was never given, specified or agreed upon as a limitation.

The Moores urge five points of error. These are to the effect that the trial court erred in refusing submission of their requested issues concerning what they contend was a construction cost limitation, and the architect's exceeding of that amount, and that they did not at any time accept the plans and specifications of the architect. It is further urged that the jury's answer to special issue number 1 is "against the great weight and degree of the evidence in the case as to be clearly wrong and unjust" and finally that "There is no evidence to support the Jury's findings to Special Issue Number One."

There were three special issues submitted to the jury, all of which were answered in the architect's favor. The first inquired:

"Do you find from a preponderance of the evidence that the Defendants agreed that the fee for services to be rendered by the Plaintiff was to be computed and paid according to the terms of the letter of January 5, 1968 . . . You are instructed that a contract in writing signed by one party may, under certain circumstances, be accepted without signature of the other party either orally or by acts and conduct which would lead a person of ordinary prudence to conclude it had been accepted."

While the Moores did make timely request for the submission of other issues, the record does not reflect objection of any nature to the issue or to the form of the issue as it was submitted. The other two issues concerned the reasonable value of the architectural services rendered and reasonable attorney's fees.

Two of appellant Moore's points urge error in the trial court's refusal to submit issues concerning an agreed limitation on the construction of the contract. A court, submitting a case upon special issues, shall submit the controlling, as distinguished from the evidentiary, issues. Texas Rules of Civil Procedure, rule 279; Green v. Blanks, 342 S.W.2d 141 (Tex.Civ. App.—Austin 1960, writ ref'd, n.r.e.). The letter of January 5 (referred to in special issue number 1) is quite clear that the fee for architectural services was "For a fee of 10% of the total cost of construction", an uncertain and undisclosed sum, without limitation. Incorporated as it was in the special issue submitted by the trial court, we are of the opinion that the issue submitted encompassed the determinative question on which the jury was to pass.

Professor Hodges, in commenting upon shades or phases of other issues, states: "If the submitted issue is not defective, the requested issue is clearly to be refused if it is a shade or phase." Hodges, Special Issue Submission in Texas sec. 53, p. 135 (1959). Any inquiry here relative to a specific or general cost limitation being contained in the parties' agreement would be a shade or phase of the submitted controlling issue. The quoted issue submitted by the trial court asked the final and encompassing question: Whether there was an agreement, pursuant to the letter of January 5th which contained no construction cost limitation, to pay architectural fees based upon a percentage of a total cost of construction. The burden was upon plaintiff to show that the entire agreement was encompassed within the letter and that no condition or limitation existed outside of that instrument. This burden was carried and the jury responded affirmatively.

The rule is clear in this state that if a positive cost limitation is stipulated in an architect's employment contract a substantial violation thereof will preclude recovery. Bueche v. Eickenroht, 220 S. W.2d 911 (Tex.Civ.App.—San Antonio 1949, no writ); Rose v. Shearrer, 431 S. W.2d 939 (Tex.Civ.App.—San Antonio 1968, no writ). Such rule is not applicable to the present situation, however, for here, as found by the jury, there was no expressed cost limitation in the parties' agreement or contract. In Baylor University v. Carlander, 316 S.W.2d 277 (Tex. Civ.App.—Dallas 1958, writ ref'd n.r.e.) the jury found there was no cost limitation on a building to be constructed and, in affirming a judgment for the architect, employed the rule applicable where plans are prepared according to details dictated by the owner. The Court there stated "Bueche v. Bikenroht (sic) Tex.Civ.App., 220 S.W.2d 911, is authority for the proposition that where the employment contract, though oral, does not contain a cost limitation but does contain an obligation to design a building according to identified plans, the architect is entitled to compensation, even though the cost exceeds the hopes and expectations of the owner." Baylor University v. Carlander, supra, 316 S.W.2d p. 289 (parenthesis added). This we believe is applicable to the present fact situation. Appellants' first and third points of error are overruled.

Appellants' second point concerns the refusal of the trial court to submit the issue inquiring whether or not the plans were accepted by Dr. and Mrs. Moore. This point pertains to recovery under a theory of quantum meruit. The theory upon which plaintiff recovered, however, was that the letter of January 5th embodied the terms of the agreement—the complete contract—between the parties. An action in quantum meruit is one independ-

ent of and distinct from an action upon a contract. Ochiltree County v. Hedrick, 366 S.W.2d 866 (Tex.Civ.App.—Amarillo 1963, writ ref'd n. r. e.). An issue inquiring as to a possible element on this theory would have been immaterial and the refusal to submit was proper. Appellants' second point is overruled.

The last two points urge no evidence or insufficient evidence to support the jury's answer to special issue number 1. The evidence, much of which is set out above, preponderates clearly in favor of the verdict and judgment. Appellants' last two points are overruled.

The judgment of the trial court is affirmed.