**Ignacio L. TORRES et al., Appellants,**

v.

**Edwin T. JARMON, Appellee.**

**No. 15225.**

Court of Civil Appeals of Texas, San Antonio.

Oct. 31, 1973.

Rehearing Denied Nov. 21, 1973.

Tuck R. Chapin, San Antonio, for appellants.

Biery, Biery, Davis & Myers, San Antonio, for appellee.

BARROW, Chief Justice.

Appellants, Ignacio L. Torres, Jr., and David G. Makar, partners in the architectural firm of Torres & Makar, have perfected this appeal from a take-nothing judgment non obstante veredicto entered in their suit to recover for professional services rendered pursuant to a written contract with appellee.

On August 16, 1971, appellee, as owner, and appellants, as architect, entered into a written contract on a form prepared by the American Institute of Architects, whereby appellants agreed to perform architectural services in connection with appellee's plan to construct a veterinary hospital to cost approximately $70,000. Appellee planned to lease said premises to his friend, Dr. Gerard Fisher; and, therefore, Dr. Fisher worked closely with appellants in the design of said proposed structure. It is conceded by appellee that substantial services were performed by appellants in preparing proposed designs, together with detailed plans and specifications for a "first-class" veterinary hospital. Unfortunately, however, the low bid for construction of the structure was $133,000, which was greatly

in excess of the fixed limitation of "approximately $70,000," together with a bidding contingency of ten per cent as provided in the contract; and the plans were never used by appellee.

Appellants do not question the fixed limitation and that the low bid was greatly in excess of such sum. Recovery was sought, however, upon the contract, and specifically upon Option (3) of Section 3.5.1. This section provides:

"If the lowest bona fide bid or negotiated proposal, the Detailed Cost Estimate or the State of Probable Construction Cost exceeds such fixed limit of Construction Cost (including the bidding contingency) established as a condition of this Agreement, the Owner shall (1) give written approval of an increase in such fixed limit, (2) authorize rebidding the Project within a reasonable time, or (3) cooperate in revising the Project scope and quality as required to reduce the Probable Construction Cost. In the case of (3) the Architect, without additional charge, shall modify the Drawings and Specifications as necessary to bring the Construction Cost within the fixed limit. The providing of such service shall be the limit of the Architect's responsibility in this regard, and having done so, the Architect shall be entitled to compensation in accordance with this Agreement."

Appellants alleged that the parties agreed to proceed under Option (3) after the low bid exceeded the fixed limitation, and that the low bidder subsequently agreed to perform the project as modified by appellants for a sum within the fixed limitation. Recovery was therefore sought for the contract fee of eighty per cent of six per cent of the contractor's final proposal of $79,000, together with a reasonable attorney's fee of at least $2,500.

The jury found substantially as follows:

1. That on December 20, 1971, and following receipt of the low bid of $133,000, the owner made an election to exercise Option 3 contained in Section 3.5.1.

2. That following the exercise of such option, appellants did not substantially fail to perform their obligations under such Option 3 to modify the drawings and specifications as necessary to bring the construction costs within the fixed limit.

3. Appellants did make demand for payment of their architectural fees more than thirty days prior to January 24, 1972.

4. The sum of $2,090 would fairly and reasonably compensate appellants' attorney for legal services rendered in prosecution of this suit.

Appellants urged, and the trial court found in granting judgment non obstante veredicto, that there was no evidence to support the jury's verdict to Questions Nos. 1 and 2.

Appellants assert three assignments of error on this appeal. They urge that the verdict of the jury is supported by sufficient evidence, and that the trial court erred in not entering judgment on the verdict for the contract fee, together with the reasonable attorney's fee as found by the jury. In the alternative, appellants assert that the court erred in refusing to submit their requested issue as to what amount would constitute a reasonable fee for the architectural services performed by appellants. By cross-point, appellee urges that the trial court erred in admitting testimony by appellant, Torres, of the reasonable value of the services rendered by appellants.

It is obvious from a reading of the statement of facts that there were two factors which largely brought about the controversy between these parties. In the first place, appellee was a traveling salesman and did not have any personal contact with either appellant after the contract was signed. He, thus, permitted Dr. Fisher to work directly with appellants on the design of the building, although appellants do not

contend that Dr. Fisher had any authority to change the cost limitation. Dr. Fisher was primarily interested in obtaining a unique and first-class veterinary hospital, and not in holding down the cost. Secondly, Dr. Fisher worked primarily with appellant, Torres, who did not realize until the bids were opened, that the contract contained a fixed limitation on the cost. Thus, it was almost inevitable that the bids would exceed the limitation, although even appellants were surprised that the low bid was almost double the fixed limitation. Neither appellee nor Dr. Fisher were advised of any increase in the anticipated cost during the design stage of the project.

Appellant, Makar, telephoned appellee after the bids were opened on December 20, 1971, and advised him that the low bid was in excess of the fixed limitation. Makar testified: "Anyway, he asked me what the next step was, and I told him, well, usually we like to work with the low bidder and see what we can do about getting the project cut down within the budget. He said proceed and work with Jerry [Fisher] and let's get it going, and that's what we did." Appellee admitted that this conversation occurred, although he understood that appellants were going to try to get the costs down without changing the original plans.

Appellants commenced working with Raymond L. Clauss, an executive officer of the low bidder, Roma Construction Co., as well as with Dr. Fisher, in an effort to reduce the construction costs to a figure within the cost limitation in said contract. No new designs or plans were prepared by appellants, but some twelve to twenty changes or modifications in the original plans were suggested by Mr. Clauss and approved by Dr. Fisher. Some were substantial modifications, such as eliminating the second floor which was originally to be constructed for living quarters, as well as omitting the carport, incinerator, storage and bath adjoining the premises. Other changes relate to the appearance of the building, such as the elimination of a covered court yard and change of the clay tile roof to asphalt shingles. Cheaper materials were provided for the floors, windows and fixtures. A single waiting room was to be provided in lieu of the separate facilities which had been planned for dogs and cats. These suggested changes are contained in a memorandum introduced into evidence by Mr. Clauss. Several other changes in the memorandum are not legible and were not explained.

Mr. Clauss proposed, at a meeting with appellants and Dr. Fisher on January 14, 1972, that he would construct the veterinary hospital with the suggested changes and modifications for $88,808. Dr. Fisher advised, however, that he was certain appellee would not be willing to spend this amount. Mr. Clauss then agreed to try to find additional ways to reduce the cost, and the parties were to meet again on Saturday morning, January 22, 1972. At this subsequent meeting, Dr. Fisher advised that appellee would not go over the $70,000, and he and appellant, Torres, then left the meeting. Mr. Clauss, therefore, did not present his revised proposal to Dr. Fisher; and, consequently, these modifications were never approved nor rejected by Dr. Fisher or appellee. Nevertheless, Mr. Clauss and both appellants testified that Roma Construction Company was willing to perform the modified job for $79,000.[1] On Monday, January 24, 1972, appellants filed suit to recover for their services. On the same date, appellee, through his attorney, notified appellants that he desired to exercise Option (2) of Section 3.5.1, and that they should readvertise for bids on the original proposal. This was never done and would undoubtedly have been a futile attempt to obtain a bid within the fixed cost limitation.

■ It is settled law in this state that if a positive cost limitation is stipulated in an

1. An exhibit contains the computations of Mr. Clauss; and it is seen that the second proposal totals $81,552, although there is little or no explanation for this reduction.

architect's employment contract, a substantial violation thereof will preclude recovery. Moore v. Bolton, 480 S.W.2d 805, 809 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.); Rose v. Shearrer, 431 S.W.2d 939 (Tex.Civ.App.—San Antonio 1968, no writ); 5 Am.Jur.2d, Architects, Section 17. Here appellants concede that the contract contains a fixed limitation of "approximately $70,000," and it is undisputed that the bid of $133,000 is a substantial violation of such limitation.

■ Therefore, the question before us is whether there is evidence to support a recovery under Option (3) of Section 3.5.1 which is applicable where the bid exceeds the fixed limitation, plus bidding contingency of ten per cent. It is not contended that appellant, Makar, and appellee had any discussion specifically in reference to this option at the time Makar advised appellee of the bids. Nevertheless, the testimony of said parties, when viewed under the no evidence test,[2] is sufficient to support the jury finding in Question No. 1 that appellee authorized appellants to proceed under Option (3) to revise the project scope and quality.

■ It is seen, however, that there is no evidence to support the finding of the jury to Question No. 2 that the construction cost was brought within the fixed limitation. According to Dr. Fisher's undisputed testimony, the lowest proposal presented to him was $84,000, and there is no showing that he approved any changes or modifications in the original project required to bring the construction cost below the $84,000 bid presented on January 14.[3] It is not asserted by appellants nor Mr. Clauss that Dr. Fisher or appellee even knew of the proposal of $79,000, much less that either agreed to the changes and modifications necessary to reduce the construction costs to that sum. At the very least, appellants would have been required by Option

(3) to prepare an addendum to drawings and specifications to reflect the adjustment in the scope of the original plans. Mr. Clauss testified that he did not inform appellants of the $79,000 proposal until he wrote them a letter subsequent to January 22, 1972. In this connection, appellants offered into evidence a letter from Mr. Clauss dated May 2, 1972. Thus, appellants could not have approved the changes made by Mr. Clauss between January 14 and the January 22 meeting. In this situation, it cannot be said that such subsequent proposal fulfilled appellants' obligations under Option (3) of the contract. In any event, there is no finding, and we cannot say as a matter of law, that a proposal of $79,000 would be within the fixed limitation of "approximately $70,000." The trial court did not err in disregarding the jury's answer to Question No. 2 and in entering the take-nothing judgment.

■ Nor did the trial court err in refusing to submit appellants' requested issue inquiring as to the reasonable value of the architectural services performed in connection with the design of the veterinary hospital. The contract sued on by appellants expressly authorizes payment on a percentage basis of the construction cost. Since recovery was sought by appellants on an express contract, there can be no recovery on quantum meruit. Woodard v. Southwest States, Inc., 384 S.W.2d 674 (Tex. 1964).

During oral argument, appellants pointed out that Article 8 of the contract authorizes compensation to the architect for services performed in the event of a termination of the contract due to the fault of others than the architect. There are no pleadings, and no issues were given nor requested to support recovery on such theory; and, therefore, it is unnecessary to consider whether the contract was termi-

2. See Garza v. Alviar, 395 S.W.2d 821 (Tex. 1965).

3. The exhibit prepared by Mr. Clauss shows this cost to be $88,808.

nated because of appellee's refusal to co-operate in reducing the scope of the project.

The judgment of the trial court is affirmed.