**Donald L. HOLMQUEST et al., Appellants,**

v.

**Larry Lynn PRIESMEYER, Appellees.**

**No. 17174.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Sept. 28, 1978.

Rehearing Denied Nov. 9, 1978.

Second Rehearing Denied Dec. 7, 1978.

---

Morris E. Belilove, John Dorsa, Houston, for appellants.

Dillon, Giesenschlag, Sharp & Delaney, John Delaney, Bill Youngkin, Bryan, for appellees.

EVANS, Justice.

This suit was brought by Larry Priesmeyer, an architect, to recover compensation for architectural services allegedly performed under written contract with the defendants Donald L. Holmquest and wife, Ann J. Holmquest. After a non-jury trial, the trial court entered judgment in favor of the architect for the sum of $2835.00, representing the unpaid balance of the amount due for his services under the contract and for the sum of $1,500.00 as attorney's fees. The Holmquests bring this appeal.

In their first four points of error the Holmquests challenge the legal and factual sufficiency of the evidence to support the trial court's monetary award for the value of the architect's services and its implied finding that the architect had obtained the approval of the Holmquests before performing the work on the construction documents which constitutes the basis for this suit. Under these points the Holmquests argue that the architect failed to prove a right to any monetary recovery under the contract and that he also failed to prove that he had performed a condition precedent specified in the contract requiring that he obtain the owners' approval to the preliminary drawings before proceeding with the work on the construction documents.

In late 1974 the Holmquests resided in the Bryan—College Station area of Brazos County, Texas, where Dr. Donald L. Holmquest was employed as an Associate Dean of Medicine at Texas A & M University. According to the architect's testimony, Dr. Holmquest mentioned to Mr. Raymond Reed, the Dean of the School of Architecture, that he and his wife wished to obtain an architectural design for a house which they planned to construct on some land they owned in that area. Mr. Reed transmitted this information, together with Dr. Holmquest's telephone number, to the architect who then contacted Dr. Holmquest. After several preliminary discussions between the Holmquests and the architect concerning the general type and size of the house the Holmquests wished to have designed, the architect prepared a written contract which the parties executed on January 19, 1975.

Under the terms of this contract the architect agreed to perform certain basic services on behalf of the Holmquests: (1) He agreed to consult with them to ascertain their requirements and to prepare schematic designs studies for their approval; (2) He agreed to prepare working drawings and specifications for their approval and to assist them in bidding the property; and (3) He agreed to advise and consult with them and to act as their representative in the construction phase of the project. For these services the parties agreed that the architect would receive as his compensation a sum equal to 9% of the total construction cost of the project payable as follows:

1. $100.00 payable upon execution to the agreement, such sum to be deducted from the final payment upon completion of construction.
2. 35% upon completion of the schematic design.
3. 50% upon completion of the construction documents.
4. 15% upon completion of construction.

The contract provided that the architect's basis compensation was to be determined from "the total cost or the estimated cost" of all work designed or specified by the architect and that for work not constructed such cost was to be "the lowest bona fide bid received from a qualified bidder for any and all of such work." The contract contained a further provision which stipulated that in the event of termination "due to the fault of other" than the architect, he was to be entitled to compensation for his services performed to the date of termination.

The architect testified that after the execution of the contract he sought to determine from the Holmquests their "likes and dislikes" so that they could better prepare an architectural concept which he prepared to graphically communicate to them by means of schematic design drawings and models. During the spring of 1975, the architect worked on the schematic drawings which later served as a basis for the preparation of a three dimensional model of the architect's concept. During that period of time and extending into the early summer of 1975, meetings were held between the architect and the Holmquests to discuss the work.

In July 1975, having completed his preliminary design phase of the work, the architect submitted his statement to the Holmquests in the amount of $2,205.00, which sum represented 35% of 9% of an estimated construction cost of $70,000.00. The estimated construction cost was apparently computed on the basis of an approximate $25.00 per square foot cost factor which the parties then considered to be the probable cost of construction.

After the architect completed the schematic design phase of the work, he began preparation of the construction or "working" drawings, and he and the Holmquests continued to have meetings throughout the summer and early fall of 1975. In the latter part of October 1975, a meeting was held between the architect, the Holmquests and two engineers to discuss construction details and costs. At this meeting the Holmquests received certain information from the engineers concerning the proposed foundation which did not meet their expectations, and they also indicated some concern with the architect's opinion, based upon the "guesstimate" of a builder who had reviewed his working drawings, that the current cost of construction had risen to $30.50 per square foot, resulting in a total cost estimate of approximately $91,000.00.

The testimony is disputed concerning the discussions which occurred between the parties after the October, 1975 meeting. The architect testified that approximately 3 weeks after the meeting he received a phone call from Dr. Holmquest, advising that there had been a change in his wife's professional plans and that they were no longer in a big hurry to construct the house. The architect was advised that he would take his time with the completion of the working drawings so long as construction could begin about the summer of 1976, and, accordingly, the architect continued with his work and did not contact Dr. Holmquest again until May 1976. At that time he had some difficulty reaching Dr. Holmquest, who failed to return his calls, but finally at the urging of a mutual friend, he made a concerted effort to get in touch with Dr. Holmquest and was able to do so. He advised Dr. Holmquest that the interior elevations were available for review and that the plans could be finalized within the next week. Dr. Holmquest then advised him that he had bought a house in Houston and had the Bryan property up for sale.

The Holmquests testified that after the October meeting, the architect told them that he would contact them "within 3 weeks", and that when they did not hear from him until May 1976, they assumed that he had abandoned the project.

It is the Holmquests' contention that since the house was not constructed and because the architect did not obtain a bid from a qualified builder which could serve as a basis for computing the construction cost of the project, he did not prove that he was entitled to recover any compensation for the construction document phase of the work. This contention will be overruled.

The contract provision for determining the total construction cost based upon a bid of a qualified builder contemplates that completed construction documents would be available to the architect for delivery to the builder. At the time the Holmquests advised the architect that they were no longer willing for him to proceed with the work, the construction documents were only 90% complete, and the architect testified that since the construction documents were not complete, he did not obtain a builder's bid on the work.

■ The trial court found that the architect had performed personal services in a good and workmanlike manner and within a reasonable period of time. No additional findings were requested or filed by either party. In support of the trial court's judgment a finding will be presumed that the termination of the work was due to "fault of others" than the architect.

■ The contract stipulates that the architect is entitled to compensation for services performed to the date of termination, when such termination is due to no fault attributable to him, but it does not specify a particular method for determining the architect's compensation under such circumstances. Thus, the trial court properly based its award upon evidence reflecting what constituted a reasonable and customary compensation for architectural services of a similar nature in that locale. *Baylor University v. Carlander,* 316 S.W.2d 277, 293 (Tex.Civ.App.—Dallas 1958, writ ref'd n. r. e.).

■ The trial court found that the estimated construction cost of the house approved by the parties was $70,000.00, and this finding is supported by the evidence and is not directly challenged by the Holmquests. The trial court was justified in adopting this figure as the "total cost or estimated cost" of the work designed by the architect to the date of termination, and using it as a basis for computing a reasonable and customary compensation to be paid to the architect for his services performed to that date.

There was also testimony that the architect's regular charge for similar services was $15.00 per hour and that he had expended somewhere between 800 and 100 hours on this project. Based upon a computation of $15.00 per hour multiplied by 800 hours, the value of the architect's services would have been in the amount of $12,000.00. The architect testified that he was only seeking a recovery in the amount of $4,391.78, which amount included the sum of $2,205.00 he had received for the schematic design work, and this was the amount he had billed to Dr. Holmquest. Mr. Carroll Claycamp, a registered engineer and architect, testified that his minimum rate was $25.00 per hour and that a $15.00 per hour rate would be a "fair" charge in Brazos County, Texas. He also testified that the plans which the architect had prepared for the Holmquests were of expert quality. The trial court was at liberty to consider this testimony as some evidence of reasonable and customary compensation for similar architectural services in the Bryan—College Station area at the time the architectural services were performed, and its award was well within the range of the evidence presented.

■ The trial court could also have concluded from the evidence that the Holmquests gave their approval to the preliminary design phase of the work and by their conduct authorized the architect to continue his work on the construction documents. It is undisputed that the Holmquests indicated to the architect that they were very pleased with the architectural concept demonstrated by his schematic design model, and the architect's preliminary statement for the schematic design phase of the work was paid without objection by the Holmquests.

Although the testimony does indicate that the Holmquests became concerned about the total cost of the work after the October 1975 meeting, there is no indication that the Holmquests then or thereafter advised the architect to stop work on the construction documents until that phase was 90% completed. The contract does not contain an express cost limitation and there is evidence from which the trial court could have concluded that the Holmquests' conduct led the architect to believe that he was authorized to continue his work on the construction documents. *Moore v. Bolton,* 480 S.W.2d 805 (Tex.Civ.App. [14th Dist.] 1972, writ ref'd n. r. e.).

■ Moreover, a party pleading the performance of conditions precedent is required to prove only those which are specifically denied by the opposite party. Rule 54, Texas Rules of Civil Procedure. In his original petition the architect alleged that he had performed all conditions precedent to his being entitled to payment of a portion of his total fee. The Holmquests proceeded to trial on a general denial. Under this state of the pleading, the architect was not required to prove performance of condition precedent. *Dairyland County Mutual Ins. Co. v. Roman,* 498 S.W.2d 154 (Tex.Civ.App. 1973); *City of Houston v. Flanagan,* 446 S.W.2d 348 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n. r. e.). The Holmquests' first four points of error are overruled.

The Holmquest points of error 5 through 7 complain of the trial court's award of attorneys fees, however, upon oral submission of the cause, the Holmquest counsel announced to the court that these points would not be urged, and it is, therefore, unnecessary to consider them here.

In their last two points of error the Holmquests allege that the contract is void and that the architect is not entitled to a recovery based thereon because the contract does not contain a notice of their right to cancel the agreement and the architect failed to inform them of their right to cancel and did not provide them with a duplicate completed notice of cancellation as specified by the Home Solicitation Transaction Act, Article 5069–13.02 Tex.Rev.Stat. Ann.

The Home Solicitation Transaction Act's transaction within its coverage as meaning a "consumer transaction":

> (A) for the purchase of goods, other than farm equipment, * * * or services, payable in installments or in cash where the consideration exceeds $25, in which the merchant or person acting for him engaged in a personal solicitation of the sale to the consumer at a residence and the consumer's agreement or offer to purchase is given at the residence to the merchant or person acting for him, but it does not include a sale made pursuant to a preexisting revolving charge account or retain charge agreement, or a sale made pursuant to prior negotiations between the parties at a business establishment at a fixed location where goods or services are offered or exhibited for sale; or . . . ."

The terms "consumer" and "merchant" are defined in the act as follows:

> "Consumer" means an individual who seeks or acquires real or personal property, services, money, or credit for personal, family, or household purposes.
> "Merchant" means a party to a consumer transaction other than a consumer."

It is the Holmquests' contention that since the contract was signed either at the architect's apartment, where he also maintained his offices, or at the Holmquests' residence, it was a "personal solicitation" to a "consumer" . . . "at a residence" and, therefore, a transaction within the meaning of the Act.

■ The Homes Solicitation Transaction Act was designed to protect residential occupants from high pressure door-to-door salesmen and to allow a "cooling-off" period in which a contract thus negotiated might be rescinded. *McDaniel v. Pettigrew,* 536 S.W.2d 611 (Tex.Civ.App.—Dallas) 1976, writ ref'd n. r. e.). The evidence in the case at bar does not compel the conclusion that the Holmquests are entitled to the protec-

tion of this Act. This point of error is denied.

 In a cross point of error, the architect contends that the trial court's award should have been based upon the $91,000.00 construction estimate, rather than the preliminary estimate of $70,000.00, and that the trial court's findings in this respect are against the great weight and preponderance of the evidence. For the reasons stated, this cross point will be denied.

The trial court's judgment is affirmed.

Motion for Rehearing

EVANS, Justice.

The Holmquests, on rehearing, complain of the trial court's order striking their amended answer because the order was not signed until after the completion of trial. The transcript reflects that the order was entered prior to final judgment in the cause, and the order recites that the plaintiff's motion to strike was heard by the court on the first day of trial. Although the statement of facts reflects discussion between court and counsel indicating that the plaintiff's motion to strike was overruled, the order entered by the court is to the contrary and must be considered controlling. The Holmquests did not complain by point of error of the trial court's ruling on the plaintiff's motion to strike, and since the matter is raised for the first time in motion for rehearing, it cannot be considered by this court. *Aycock v. Travis County,* 225 S.W.2d 910 (Tex.Civ.App.—Austin 1953, writ ref'd.); *Advance Loan Service v. Mandik,* 306 S.W.2d 754 (Tex.Civ. App.—Dallas 1957, writ ref'd. n. r. e.).