COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-355-CV

 

 

BOBBY FERACHI                                                                 APPELLANT

 

                                                   V.

 

SHAWN CADY                                                                       APPELLEE

 

                                              ------------

 

            FROM THE 211TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








After a jury trial, the trial court rendered
judgment awarding Appellee Shawn Cady damages in his breach of contract claim
against Appellant Bobby Ferachi.  Ferachi
now appeals from that judgment.  In four
issues, Ferachi argues that the trial court erred by failing to render judgment
on his affirmative defense, that the contract at issue was unenforceable as a
matter of law because it was nothing more than an agreement to agree, that the
trial court erred by refusing to render judgment on his Deceptive Trade
Practices Act (ADTPA@)
claims, and that the contract was void under section 39.004 of the Texas
Business and Commerce Code.  Because we
hold that the contract was not unenforceable as a matter of law and that
section 39.004 was not applicable to the contract at issue, we affirm.

                        BACKGROUND FACTS AND PROCEDURAL HISTORY








Cady and Ferachi became acquainted when Cady was
in the process of divorcing Ferachi=s
ex-wife.  The two became friends, and on
July 23, 2005, they entered into a written agreement (Athe
contract@) under
which Ferachi agreed to buy and Cady agreed to sell an interest in a
four-bedroom houseboat (AHouseboat@).[2]  The contract provided that Ferachi would make
monthly payments of $2,500 to Cady, plus a proportionate share of the slip fees
and insurance.  The contract also
provided that Ferachi would give Cady ten days= notice
if he could not make a scheduled payment. 
In such case, Cady would furnish a line of credit to Ferachi, not to
exceed $10,000, to cover any missed payments by Ferachi.  The parties agreed that they would make
arrangements in the future to repay any amounts extended under the line of
credit, but A[n]otwithstanding the foregoing,@ any
sums owed to Cady by Ferachi at the time the mortgage was retired would be
incorporated into a promissory note with payment terms agreed to at that
time.  The contract also stated that
Ferachi=s
obligation under the contract was Aabsolute
and unconditional@ and that A[i]n the
event that Ferachi fails to satisfy his obligations hereunder or in the event
that Ferachi elects to cease paying all or any portion of the payment
obligations hereunder, Ferachi shall continue to be liable for his
proportionate share of the cost of the Boat as set forth herein.@

At the time of the contract=s
execution, Ferachi gave Cady a check for $8,945, which included two of the
$2,500 payments and payments for insurance and the slip fee.  Ferachi failed to make any more payments
after demand by Cady, and Cady brought suit against him for breach of contract
and fraud in the inducement.








Ferachi filed a counterpetition alleging
conversion of his personal property that had been on the Houseboat.  He also alleged that the contract was void
because it was a consumer credit contract that did not include the statutory
notice of rescission under business and commerce code sections 39.004 and
39.008.  He also alleged a DTPA violation
and asserted affirmative defenses, including the defense that the written
agreement was too vague and ambiguous to constitute a contract.

At trial, Cady testified that Ferachi approached
him about partnering on the two-bedroom houseboat that Cady already owned and
that when Cady told him that the boat was too small for two families, they
looked into getting a four-bedroom houseboat. 
He stated that the original agreement was that he would put down his
half of the purchase price of the Houseboat as the downpayment and that Ferachi
would make the monthly payments on the other half.  But after Cady purchased the Houseboat and
took out a note on it, Ferachi told him that he could not afford the monthly payments.  They then entered into the contract under
which Ferachi would be responsible for only a third of the cost.








Ferachi claimed that they had no agreement before
Cady bought the bigger Houseboat.  He
asserted that Cady bought the Houseboat on his own and then approached Ferachi
with the suggestion that he buy an interest. 
Ferachi testified that two days after signing the contract, he left a
message for Cady that he had made a mistake and was not willing or able to buy
the interest in the Houseboat.  He stated
that Cady returned his call and told Ferachi that they would talk about it when
Cady returned from his trip.  Ferachi
also testified that he did not understand Cady to be in the business of selling
boats and that, although he knew Cady had sometimes loaned money to people, he
did not understand Cady to be in the business of making loans.

Joseph Flowers, the owner of Xtreme Marine, where
the Houseboat was purchased, testified that before Cady bought the Houseboat,
he overheard Ferachi and Cady in conversations discussing partnering on a
houseboat, and that after the Houseboat was purchased, Ferachi held himself out
to Flowers as a partner in the Houseboat.

The jury found that Ferachi Afail[ed]
to comply with the agreement,@ that
$105,000 would fairly compensate Cady for Ahis
damages proximately caused by the breach,@ and
that Ferachi did not commit fraud in the inducement.  With respect to Ferachi=s DTPA
claim, the jury found that the transaction contemplated by the contract was a A[c]onsumer
transaction.@ 
But the jury further found no damages resulting to Ferachi from any
false, misleading, or deceptive act or practice by Cady in the solicitation of
the transaction.








The jury also found that the contract left a
material term open for future negotiations, that Cady did not breach the
contract such that Ferachi=s
performance was excused, that Cady did not repudiate the contract, that Ferachi
did not rescind the contract on or before the third day after the contract was
signed, and that Cady did not convert Ferachi=s
property.

Cady filed a post-trial Abrief in
support of the judgment@ asking the trial court to
disregard the jury=s answer to question nine of the
court=s
charge.  He contended that the jury=s answer
to that question, which asked if a material term had been left open, was
immaterial in that the contract contained two contractsCone for
the purchase of an interest in the Houseboat and one for the line of
credit.  Thus, the jury=s
finding that a material term was left open did not affect the jury=s
determination that Cady should be awarded $105,000 for breach of the contract
to buy the Houseboat interest.  The trial
court rendered judgment for Cady on his breach of contract claim and awarded
him $105,000 as damages.

                                              ANALYSIS








In his second issue, Ferachi contends that the contract
sued upon was unenforceable as a matter of law because it constituted nothing
more than an agreement to agree. 
Question nine of the court=s charge
instructed the jury that A[i]t is your duty to interpret
the language of the agreement to determine if a material term of the agreement
was left open for future negotiation@ and
asked whether the agreement left a material term open for future
negotiation.  The jury answered Ayes.@  The trial court did not expressly rule on
Cady=s motion
to disregard the jury=s answer but ultimately rendered
judgment awarding Cady damages for breach of contract.

A trial court generally may disregard a jury
verdict and render judgment notwithstanding the verdict (AJNOV@) only
if (1) no evidence supports the jury finding on an issue necessary to
liability; (2) the evidence conclusively establishes the right of the movant to
judgment; (3) the evidence conclusively negates the right of the opponent to
judgment; or (4) the evidence is insufficient to raise a material fact issue.[3]  But a trial court may, without a motion by a
party, disregard a jury=s finding on an issue erroneously
submitted, such as a question of law.[4]








Ferachi argues that there was only one contract
between the parties, that the contract allowed him to miss payments, that the
contract capped his maximum liability for missed payments at $10,000, that the
$10,000 would be extended as credit, and that the repayment terms for any
amount extended would be addressed in a future agreement between the
parties.  He further argues that no such
future contract was ever made by the parties. 
Thus, he contends, the contract at issue constitutes nothing more than
an unenforceable agreement to agree and is void and unenforceable as a matter
of law.

The parts of the contract on which Ferachi relies
state as follows:

2.     . . . In the event that,
for whatever reason, Ferachi is unable to make all or a portion of any monthly
payment, he will provide notice to Cady not less than ten (10) days prior to
the scheduled payment date in order to permit Cady to make up any shortfall in
such monthly payment.  Payments made by
Cady on behalf of Ferachi shall be handled in accordance with paragraph 4,
below.

 

. . . .

 








4.     Payments made by Cady to
satisfy the Ferachi payment obligations, including full or partial monthly
payments as set forth in paragraph 2 or payments made by Cady with respect to
Ferachi=s share of the
Maintenance Fees shall be repaid by Ferachi under a line of credit furnished by
Cady not to exceed $10,000.00 with all advances under such line bearing
interest at the rate of ten percent (10%) per annum.  Repayment of advances made by Cady to Ferachi
or for the benefit of Ferachi will be in accordance with arrangements made
between the parties.  Notwithstanding the
foregoing, however, if any sums or [sic] owed by Ferachi to Cady at the time
the mortgage on the Boat is retired, the remaining sums owed by Ferachi to Cady
shall be incorporated into a promissory note with payment terms agreed to at
such time.

 

. . . .

 

7.     The obligation of Ferachi to make his proportionate share of the
purchase price of the Boat is absolute and unconditional and is equivalent to
the obligations Cady owes to the mortgagee under the purchase note.  In the event that Ferachi fails to satisfy
his obligations hereunder or in the event that Ferachi elects to cease paying
all or any portion of the payment obligations hereunder, Ferachi shall continue
to be liable for his proportionate share of the cost of the Boat as set forth
herein.  Ferachi shall have either the
option to find a substitute purchaser to assume the remaining portion of Ferachi=s
obligations hereunder or to continue to make payments in accordance with the
parties=
agreements hereunder.

Contrary to Ferachi=s
assertions, this language gave him the option to completely cease making
payments only if he found a substitute purchaser.  Furthermore, the contract did not cap his
liability under the contract at $10,000 should he cease making payments.  Rather, Cady agreed to cover up to $10,000 of
Ferachi=s share
while the mortgage was in effect, and Ferachi agreed to repay the amount paid
by Cady under that provision.








But Ferachi is correct that paragraph four did
not contain repayment terms for any amounts advanced under that paragraph.  Although the paragraph set out a maximum
amount of money that would be advanced and provided what interest rate Cady
would charge Ferachi for money advanced, it did not set out the terms of
repayment, such as how often payments would be made or what the duration of the
repayment term would be.  Ferachi argues
that these missing terms made the entire contract unenforceable.













The issue of indefiniteness in the terms of a
written agreement can arise both in the question of whether parties intended to
form a contract and in the question of whether a written agreement under which
the parties intended to be bound constitutes an enforceable contract.  That a written agreement is indefinite as to
some of the terms may indicate that the parties had no intention to be bound by
the agreement, particularly when the indefinite terms are essential, rather
than collateral.[5]  AWhether
the parties intended to enter a binding contract or merely an unenforceable
agreement to make a contract in the future is ordinarily a question of fact,@
although a court may determine that the language of the agreement establishes
as a matter of law the intent of the parties to be bound.[6]  But even if parties intended to be bound by
an agreement, a court may conclude that it is not an enforceable contract
because its terms are too indefinite for the court to determine the parties= legal
obligations and liabilities.[7]  The issue of whether a contract contains all
essential terms to be enforceable is a question of law.[8]  If a court can determine a remedy with
reasonable certainty, the court should find the contract to be definite enough
to grant the remedy if the evidence demonstrates that the parties intended to
enter into an agreement.[9]








Although Ferachi asserted in various pleadings
that there was no meeting of the minds because the terms of the contract were
too vague and ambiguous, at trial he did not dispute that he understood that he
and Cady were entering into a contract. 
Rather, he admitted that he and Cady had an agreement and that after
signing the contract, he initially began performing under the contract.  Neither party raised a fact issue about
whether they had agreed upon terms of a contract, understanding them to be an
agreement.  The only question at trial
was whether the absence from the contract of the terms on which the parties had
not yet agreed rendered the contract too indefinite to be enforceable.  Although question nine asked the jury to
determine if a material term was left open, the question of whether the
contract contained all the essential terms for it to be enforceable is a
question of law.[10]  Thus, the trial court was free to disregard
the jury=s answer
to question nine and determine as a matter of law whether the contract
contained all the essential terms to constitute an enforceable contract.[11]

What terms are material or essential to a
contract are determined on a contract-by-contract basis, depending on the
subject matter of the contract at issue.[12]  Three essential elements of a contract for
sale are A(1) the thing sold, which is the
object of the contract; (2) the consideration or price to be paid for the thing
sold; and (3) the consent of the parties to exchange the thing for the price.@[13]








Here, the subject of the sale was an interest in
the Houseboat.  Under the contract=s terms,
Ferachi agreed to pay $316,442.60 for a thirty-three percent interest in the
Houseboat.  He agreed to make monthly
payments of $2,500.00 until the total amount was paid.  The contract stated that under the mortgage
on the Houseboat, Cady owed monthly payments of $3,344.78, due on the 27th of
each month, and Ferachi agreed to make his share of the payment as the monthly
payment became due.  Ferachi agreed to
notify Cady not less than ten days before the due date if he would be unable to
pay the monthly payment by the scheduled payment date.  Cady agreed that when Ferachi had made all
the payments agreed to under the contract, and as long as Ferachi was not
otherwise in default, he would transfer to Ferachi a thirty-three percent
interest in the Houseboat.  The contract
further stated that Ferachi=s
obligation to make his share of payments was Aabsolute
and unconditional.@ 
Thus, the contract was clear as to what item was being sold (an interest
in the Houseboat), the price to be paid for the interest in the Houseboat
($316,442.60, paid in monthly installments of $2,500.00), and the parties=
agreement to exchange the item for the price.








Under the contract=s terms,
a court could determine that Ferachi had an obligation to pay Cady $2,500 per
month by the 27th of each month until he had paid a total of $316,442.60 and
that if he failed to do so, he was in breach of the contract.  The court could also determine that Ferachi
could fail to make a payment but avoid defaulting under the contract by
notifying Cady ten days before the payment was due that he could not make his
payment.  The court could further
determine that under that term, Ferachi could miss up to $10,000 of payments
without defaulting.  The court could also
determine that it was a breach of the contract if Ferachi failed to timely
notify Cady that he would miss a payment or if he missed more than $10,000
worth of payments.  The trial court could
also determine the amount of damages incurred by Cady if Ferachi stopped making
payments.  Thus, the terms of the
contract were not too indefinite for the court to determine whether Ferachi
breached the contract by refusing to make payments and what the remedy for such
a breach should be.  Accordingly, the
contract at issue was not unenforceable as a matter of law.[14]  We overrule Ferachi=s second
issue.








In his first issue, Ferachi argues that the trial
court erred by refusing to enter judgment on his affirmative defense that the
contract left open a material term because the jury=s
determination on this question was supported by the evidence.  A contract that lacks a material term is not
an enforceable contract,[15]
as Ferachi points out in his brief. 
Thus, a party may defend a breach of contract action by asserting that
the contract on which the claim is based is not enforceable as a matter of law
and therefore cannot support a breach of contract action.[16]  An assertion that the contract lacked a
material term does not establish an independent reason why a plaintiff should
not recover and is therefore not an affirmative defense.[17]  As discussed above, the question of whether
the contract contained all essential terms for it to be enforceable is a
question of law,[18]
and the jury=s answer to the question is
therefore not determinative.[19]  And, as discussed above, the contract at
issue contained all the material terms necessary for it to be enforceable.  Thus, the trial court did not err by refusing
to enter judgment for Ferachi on this issue. 
We overrule his first issue.








In Ferachi=s fourth
issue, he argues that the contract is void as a matter of law under business
and commerce code section 39.008(b)[20]
and that he was entitled to a take-nothing judgment on Cady=s breach
of contract claim.  He contends that Cady
stipulated that the contract violated section 39.004 of the business and
commerce code by failing to include disclosures required by that section.[21]  Failure to include those disclosures is a
violation of section 39.008(a).[22]  Under section 39.008(b), a contract that
violates section 39.008(a) is void.[23]  Thus, Ferachi argues, this contract is void
and cannot support a breach of contract action.








Cady, on the other hand, contends that although
he stipulated that the contract did not contain the disclosures discussed under
section 39.004, he did not stipulate that this contract was regulated by that
section.  His argument on appeal
corresponds with his argument at the charge conference:  the contract did not contain the notices set
out in chapter 39, but the contract did not fall under the purview of that
chapter and thus was not required to have the notices.  We agree with Cady.








When originally enacted in 1973, the Texas Home
Solicitations Transactions Act (Athe Act@)
applied only to consumer transactions entered into at the consumer=s
home.  The purpose of the statute was Ato
protect residential occupants from high pressure door‑to‑door
salesmen and allow a >cooling‑off= period
within which the sales contract could be rescinded.@[24]  Under the language of the Act, it applied to
any consumer transaction for the purchase of goods or services in which a Amerchant@ Aengage[d]
in a personal solicitation of the sale to the consumer at a residence@ and in
which Athe
consumer=s
agreement or offer to purchase is given at the residence.@[25]  The Act defined the term Aconsumer
transaction@ as Aa
transaction in which one or more of the parties is a consumer.@[26]  Merchant was defined as Aa party
to a consumer transaction other than a consumer.@[27]  AConsumer@ was
defined as Aan individual who seeks or
acquires real or personal property, services, money, or credit for personal,
family, or household purposes.@[28]  Courts construing the former statute declined
to apply the Act when the consumer initiated the transaction or when the
parties knew each other and the transaction was entered into after
negotiations.[29]








The legislature amended sections of the Act in
1995, broadening the statute=s
application to include most consumer transactions personally solicited by a
merchant or merchant=s agent and consented to by a
consumer any place other than the merchant's place of business.[30]  The committee report on the bill stated that A[t]he
statute [before the amendments] does not cover transactions that take place in
rented hotel rooms, restaurant parties, and other types of home parties@ and
that A[c]onsequently,
unscrupulous merchants and salespeople who run fly‑by‑night
operations at rented temporary locations cannot be prosecuted@ under
the statute.[31]  The statute as amended thus supplied
protection to consumers from unscrupulous merchants who previously avoided
liability by entering into transactions away from a residence.








The evidence in this case does not compel the
conclusion that Ferachi was entitled to the protection of the Act.[32]  The evidence showed that Ferachi, a real
estate agent[33]
who does business in an affluent part of Dallas, engaged in negotiations with
Cady that resulted in the contract.  The
parties arrived at the terms of the deal after discussion by Ferachi about what
he could afford.  The contract terms were
worked out over a period of about three weeks. 
The parties met at an IHOP restaurant to sign the contract because it
was convenient for both parties and was next to the marina.  Ferachi acknowledged that when he signed the
contract, he knew that Cady was not in the business of selling houseboats or in
the business of loaning money like a bank. 
Cady testified that Ferachi was the one who brought up the idea of
buying a houseboat together.  Even though
the jury found that the transaction was a consumer transaction, in order for
the Act to be applicable and for Ferachi to be entitled to its protection, the
jury would have also had to find that Cady solicited the transaction.[34]








There was no separate question asking the jury to
determine which party solicited the sale of the interest in the Houseboat.  But the jury was instructed in question six
that if it had found the transaction was a consumer transaction, the act of
soliciting the transaction was a false, misleading, and deceptive act.  The jury was further instructed that Ferachi
was entitled to recover any money acquired by Cady as a result of a false,
misleading, or deceptive act.  The
evidence was undisputed that Ferachi paid $8,945 under the contract.  Yet the jury awarded Ferachi no damages.  Consequently, the jury impliedly found that
Cady had not solicited the transaction.[35]  Ferachi therefore was not entitled to the
protection of the Act, Cady was not required to include in the contract the
provisions required under section 39.004, and the contract therefore was not
void for failing to include them.  Thus,
the trial court did not err by rendering judgment on Cady=s breach
of contract claim regardless of whether the court disregarded the jury=s
finding that the transaction was a consumer transaction.

Ferachi contends that the award of actual damages
is not required in a DTPA claim and that he was entitled to recover $18,300,
the amount of attorney=s fees stipulated to in the
trial court.  But although the jury found
that the transaction was a consumer transaction, there was no finding by the
jury that Cady had engaged in any false, misleading, or deceptive act or
practice under Texas law.  We overrule
Ferachi=s fourth
issue.








In Ferachi=s third
issue, he argues that the trial court erred by refusing to enter judgment on
his DTPA claim.  Ferachi argues that
because a failure to include the notices required under chapter 39 is a false,
misleading, or deceptive act under the DTPA,[36]
the contract at issue did not include those notices, and the jury found that
this transaction was a consumer transaction, the trial court should have entered
judgment in his favor on his DTPA claim. 
Because we have held the trial court did not err by rendering judgment
on the jury=s finding that Ferachi was not
entitled to the protections of chapter 39, we further hold that the failure to
include the notices in the contract was not a false, misleading, or deceptive
act under the DTPA.  Thus, the trial
court did not err by refusing to enter judgment on Ferachi=s DTPA
claim based on the failure to include the notices under chapter 39.  We overrule Ferachi=s third
issue.

                                             CONCLUSION

Having overruled each of Ferachi=s four
issues, we affirm the judgment of the trial court.

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL:  LIVINGSTON and
DAUPHINOT, JJ.

DELIVERED:  May 28, 2009











[1]See Tex. R. App. P. 47.4.





[2]Although sometimes used
interchangeably, the terms Aagreement@ and Acontract@ are not synonymous.  AAgreement@ refers to Aa manifestation of mutual assent on the part of
two or more persons,@ whereas the term Acontract@ refers to Aa promise or a set of
promises for the breach of which the law gives a remedy.@  Restatement (Second) of Contracts '' 1, 3 (1981) (emphasis
added); Wiley v. Bertelsen, 770 S.W.2d 878, 882 (Tex. App.CTexarkana 1989, no writ)
(noting that the term Aagreement@ is more broad than the
term Acontract@ and that parties might
have an agreement but not a contract). 
Throughout this opinion, we use the term Aagreement@ to refer to the parties= mutual assent to the
sale of the interest in the Houseboat and the term Acontract@ to refer to the writing
expressing that agreement. When quoting from parts of the contract, we use the
term that the parties used in the writing.





[3]See Tex. R. Civ. P. 301
(allowing trial court to render JNOV if jury finding has no support in evidence
or if directed verdict would have been proper; Tiller v. McLure, 121
S.W.3d 709, 713 (Tex. 2003); Fort Bend County Drainage Dist. v. Sbrusch,
818 S.W.2d 392, 394 (Tex. 1991); Prudential Ins. Co. v. Fin. Review Servs.,
Inc., 29 S.W.3d 74, 77 (Tex. 2000) (setting out circumstances when directed
verdict is proper); Hogue v. Propath Lab., Inc., 192 S.W.3d 641, 646
(Tex. App.CFort Worth 2006, pet.
denied).





[4]Alcorn v. Brown, 536 S.W.2d 80, 82 (Tex.
Civ. AppCFort Worth 1976, writ ref=d n.r.e.); see also
Se. Pipe Line Co., Inc. v. Tichacek, 997 S.W.2d 166, 172 (Tex. 1999)
(noting that a jury=s answer to a question
may be disregarded if question calls for a finding on a question of law).





[5]See Bendalin v. Delgado,
406 S.W.2d 897, 899 (Tex. 1966) (holding that in the agreement at issue, A[t]he failure of the
parties to reach some understanding as to price often indicates that there has
been no meeting of the minds@); Potcinske v. McDonald Prop. Invs., Ltd.,
245 S.W.3d 526, 531 (Tex. App.CHouston [1st Dist.] 2007, no pet.) (looking at
the record and determining that financing term was a material element of the
bargain Aas manifested by the
parties= focus on that provision
during negotiations@ and concluding that
there was no meeting of the minds creating an enforceable contract); see
also Scott v. Ingle Bros. Pac., Inc., 489 S.W.2d 554, 555 (Tex. 1972)
(noting that Aparties may agree upon
some of the terms of a contract, and understand them to be an agreement, and
yet leave other portions of an agreement to be made later@).





[6]Farah v. Mafrige &
Kormanik, P.C., 927 S.W.2d 663, 678 (Tex. App.CHouston [1st Dist.] 1996, no writ); West Beach
Marina, Ltd. v. Erdeljac, 94 S.W.3d 248, 257B58 (Tex. App.CAustin 2002, no pet.); see
also Potcinske, 245 S.W.3d at 531.





[7]T.O. Stanley Boot Co.,
Inc. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992) (stating that A[i]n order to be legally
binding, a contract must be sufficiently definite in its terms so that a court
can understand what the promisor undertook@ and that A[w]here an essential term is open for future
negotiation, there is no binding contract@); Sadeghi v. Gang, 270 S.W.3d 773, 776
(Tex. App.CDallas 2008, no pet.) (AIf a contract is not
clear and certain as to all essential terms, it will fail for indefiniteness.@); Miga v. Jensen,
25 S.W.3d 370, 376 (Tex. App.CFort Worth 2000), aff=d in part and rev=d in part, 96 S.W.3d 207 (Tex.
2002).





[8]Beal Bank, S.S.B. v.
Schleider,
124 S.W.3d 640, 654 n.8 (Tex. App.CHouston [14th Dist.] 2003, pet. denied); Am.=s Favorite Chicken Co. v.
Samaras,
929 S.W.2d 617, 622 (Tex. App.CSan Antonio 1996, writ denied); Farah, 927
S.W.2d at 678; see also Playoff Corp. v. Blackwell, No. 02‑06‑00249‑CV,
2008 WL 5194340, at *3 (Tex. App.CFort Worth Dec. 11, 2008, no pet.) (noting that
whether an agreement fails for indefiniteness is a question of law).





[9]Am.=s Favorite Chicken Co., 929 S.W.2d at 623; Miga,
25 S.W.3d at 376; see also Tex. Oil Co. v. Tenneco Inc., 917 S.W.2d 826,
830 (Tex. App.CHouston [14th Dist.]
1994) (AThe rules regarding
indefiniteness of material terms of a contract are based on the concept that a
party cannot accept an offer so as to form a contract unless the terms of that
contract are reasonably certain.@) (citing Restatement (Second) of Contracts ' 33(1) (1981)), rev=d on other grounds, 958 S.W.2d 178
(Tex.1997).





[10]Beal Bank, S.S.B., 124 S.W.3d at 654 n.8; Am.=s Favorite Chicken Co., 929 S.W.2d at 622.





[11]See Alcorn, 536 S.W.2d at 82
(stating that trial court may disregard jury=s answer to erroneously submitted question of
law).





[12]T.O. Stanley Boot Co., 847 S.W.2d at 221
(stating that A[e]ach contract should be
considered separately to determine its material terms@ and that A[i]n a contract to loan
money, the material terms will generally be: the amount to be loaned, maturity
date of the loan, the interest rate, and the repayment terms@).





[13]Kelly v. Rio Grande
Computerland Group, 128 S.W.3d 759, 767 (Tex. App.CEl Paso 2004, no pet.); John Wood Group USA,
Inc. v. ICO, Inc., 26 S.W.3d 12, 20 (Tex. App.CHouston [1st Dist.] 2000,
pet. denied).





[14]See T.O. Stanley Boot Co., 847 S.W.2d at 221; Miga,
25 S.W.3d at 376.





[15]See T.O. Stanley Boot Co., 847 S.W.2d at 221.





[16]See id. at 221B22.





[17]See Phillips v. Phillips, 820 S.W.2d 785, 791
(Tex. 1991) (stating that affirmative defense does not rebut facts asserted by
plaintiff but rather seeks to establish independent reason why plaintiff should
not recover).





[18]Beal Bank, S.S.B., 124 S.W.3d at 654 n.8; Am.=s Favorite Chicken Co., 929 S.W.2d at 622.





[19]See Alcorn, 536 S.W.2d at 82
(stating that trial court may disregard jury=s answer to erroneously submitted question of
law).





[20]Although Ferachi refers
to section 39.001(b) throughout this portion of his brief, it is clear from his
argument that he means to refer to section 39.008(b).  See Tex. Bus. & Com. Code Ann. ' 39.008(b) (Vernon 2002)
(now Tex. Bus. & Com. Code Ann. ' 601.201). 
Sections 39.001 through 39.009 were repealed by Act of May 15, 2007,
80th Leg., R.S., ch. 885, ' 2.47(a)(1), 2007 Tex. Gen. Laws 1905, 2082, and
recodified without substantive changes at Tex. Bus. & Com. Code '' 601.001B601.103 by Act of May 15,
2007, 80th Leg., R.S., ch. 885, ' 2.01, 2007 Tex. Gen. Laws 1905, 2027B2031, effective April 1,
2009.  Throughout this opinion, we
continue to cite to sections 39.001 through 39.009, which were still in effect
when the parties filed their briefs.





[21]See Tex. Bus. & Com.
Code ' 39.004 (now Tex. Bus.
& Com. Code Ann. ' 601.052). 





[22]Id. ' 39.008(a) (now '' 601.152, 601.154). 





[23]Id. ' 39.008(b) (now ' 601.201). 





[24]McDaniel v. Pettigrew, 536 S.W.2d 611, 614
(Tex. Civ. App.CDallas 1976, writ ref=d n.r.e.).





[25]Act of May 18, 1973, 63d
Leg., R.S., ch. 246, ' 1, 1973 Tex. Gen. Laws
574, 574B75, repealed by Act
of May 22, 1997, 75th Leg., R.S., ch. 1008, ' 6, 1997 Tex. Gen. Laws 3601, 3602; McDaniel,
536 S.W.2d at 614; see also Am. Quality Roofing, Inc. v. Ipock,
730 S.W.2d 470, 471 (Tex. App.CFort Worth 1987, no writ) (applying the Act when
salesperson approached purchaser at his home and solicited his purchase of
materials and labor for roof repair, the contract terms were negotiated at
purchaser=s home, the contract was
signed there, and purchaser had no prior business relationship with seller).





[26]Act of May 18, 1973, 63d
Leg., R.S., ch. 246, ' 1, 1973 Tex. Gen. Laws
574, 574B75 (repealed 1997).





[27]Id.





[28]Id.





[29]See Langston v. Brewer, 649 S.W.2d 827, 829
(Tex. App.CFort Worth 1983, no writ)
(holding that Act did not apply to transaction for remodeling work on consumers= home even though
contract was signed there when parties had been involved in a prior
transaction, consumers contacted the merchant about furnishing the services,
and the merchant prepared the contract after negotiations); Coniglio v.
Dallas Drapery Shops, Inc., 593 S.W.2d 426, 427 (Tex. Civ. App.CDallas 1980, no writ)
(holding that transaction at issue not subject to the Act when consumers
contacted merchant and requested a representative be sent to their home, agent
called on consumers at their home and left a prepared written contract, and
consumers subsequently mailed contract to merchant); Holmquest v. Priesmeyer,
574 S.W.2d 173, 178 (Tex. Civ. App.CHouston [1st Dist.] 1978, no writ) (holding that
Act did not apply to transaction between architect and clients even though
contract was signed either at architect=s apartment or clients= residence when architect
contacted clients after they had asked university=s dean of architecture
school about obtaining an architectural design and dean had forwarded clients= name and contact information
to architect); McDaniel, 536 S.W.2d at 615B16 (holding that Act did
not apply to contract for the sale of a lot and building of a house when
transaction is being negotiated by a licensed real estate broker, an exception
under the Act, and when consumers themselves solicited the services).





[30]See Act of May 27, 1995,
74th Leg., R.S. ch. 926, ' 1, 1995 Tex. Gen. Laws
4649, 4649 (repealed 1997).





[31]House Comm. on Business
& Industry, Bill Analysis, Tex. H.B. 1885, 74th Leg., R.S. (1995), available
at http://www.legis.state.tx.us/BillLookup/Text.aspx?LegSess=74R&Bill=HB1885
(last visited May 28, 2009).





[32]See Holmquest, 574 S.W.2d at 178.





[33]See Tex. Bus. & Com. Code
Ann. ' 39.002(b)(4)(B) (now ' 601.002(b)(4)(B))
(excepting from statute=s application the sale of
real property when purchaser is represented by licensed real estate broker).





[34]See id. ' 39.002(a) (now ' 601.002(a)) (stating
that the Act applies only to Aconsumer transaction@ in which a merchant or
the merchant=s agent engages in a
personal solicitation of a sale).





[35]See id.





[36]Id. ' 39.008(e) (now ' 601.204).