364

In the Matter of Louis J. Lefkowitz, as Attorney-General of the State of New York, Appellant, *v.* E. F. G. Baby Products Co., Inc., Respondent.

Third Department, January 25, 1973.

*Louis J. Lefkowitz, Attorney-General (William J. Kogan* and *Ruth Kessler Toch* of counsel), appellant.

*Amen, Weisman & Butler (Robert J. Ellis* of counsel), for respondent.

REYNOLDS, J. This is an appeal from an order of the Supreme Court, entered March 3, 1972 in Albany County, which struck a paragraph of the Attorney-General's petition and modified a previous preliminary injunction, and further held that the Attorney-General did not have standing to enforce article 10-A of the Personal Property Law.

In the instant special proceeding the appellant, pursuant to subdivision 12 of section 63 of the Executive Law, seeks to enjoin certain business practices of the respondent, a franchised retailer of a baby furniture product known as Stroll-O-Chair, on the grounds that such practices amount to a continuous fraud on consumers.

Respondent sells its product via door-to-door solicitation. In approaching prospective customers respondent mails to newly expecting parents a card stating that a " parcel " is being held for them and giving a phone number to arrange for pick-up. When the given number is called a representative of the respondent informs the caller that the company wishes to deliver a free package of baby products, called a " Stork-Pak ", and also that they would like the expectant parents to view a film on baby safety. If the response is receptive, a salesman then delivers the " Stork-Pak " and attempts to persuade the people to view the film which is in reality a promotion of the respondent's product. Immediately following the film, there is a sales pitch urging the purchase of a Stroll-O-Chair, which retails for around $400. If the couple signs the purchase contract, they can pay cash, use a lay-away plan or a budget plan. However, the contract includes a liquidated damages clause of 50% of the retail cash price in the event of cancellation of the order. If a customer chooses the lay-away plan, respondent does not inform

him of the provisions of article 10-A of the Personal Property Law which requires notice to the buyer that he can cancel the contract within three days and, in doing so, can lose no more than 5% of the total price as damages.

On October 13, 1971 Special Term granted a preliminary injunction ordering the respondent to apprise their door-to-door customers of their right to cancel within three days (i.e., to comply with section 428 of the Personal Property Law) and enjoining the further use of the lead card. However, on March 2, 1972 Special Term, as previously noted, modified this injunction by striking that part which ordered the respondent to provide notice. In addition, Special Term held that the appellant had no authority under article 10-A of the Personal Property Law to enforce compliance with its provisions since that statute only authorized a buyer's right of action. Accordingly, it struck paragraph nine of the petition which charged respondent with violations of article 10-A. The instant appeal then ensued.

Before proceeding directly to the issues raised here, we would note that we have affirmed a judgment of the County Court, Albany County (*De Rouville* v. *E. F. G. Baby Prods. Co.*, 69 Misc 2d 252, affd. 40 A D 2d 736), holding that the respondent's lay-away plan was within the purview of article 10-A and that notice of the right to cancel must be given to the respondent's customers. Therefore, it is quite clear that sections 427 and 428 of the Personal Property Law are applicable to respondent's lay-away plan.

The first question then is whether subdivision 12 of section 63 of the Executive Law authorizes appellant to enjoin violations of article 10-A. Concededly, there is no grant of power to appellant to enforce compliance with article 10-A via injunctive relief and, therefore, Special Term correctly struck that part of the preliminary injunction which ordered the respondent to affirmatively comply with article 10-A by giving the notice required by section 428. However, pursuant to subdivision 12 of section 63, appellant may seek injunctive relief against statutory violations when such violations amount to *persistent* and *repeated* fraud or illegality in the carrying on of business (see *Matter of Lefkowitz* v. *Burden*, 22 A D 2d 881; *Matter of State of New York* v. *ITM, Inc.*, 52 Misc 2d 39; cf. *Matter of State of New York* v. *Parker*, 38 A D 2d 542, affd. 30 N Y 2d 964; *Matter of State of New York* v. *Parkchester Apts. Co.*, 61 Misc 2d 1020, affd. 34 A D 2d 1106, affd. 28 N Y 2d 842).

The next question is thus whether the acts of the respondent here involved are fraudulent or illegal within the meaning of subdivision 12 of section 63. "Fraud" is defined by this section as "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions." Here appellant sets out three separate practices of the respondent which allegedly are fraudulent and/or illegal; the failure to give the notice required by section 428 of the Personal Property Law in that consumers are misled as to their rights to cancel the contract; the 50% liquidated damages clause contained in the respondent's contract in that it misleads consumers by not alerting them to the fact that they are only required by law to pay a 5% cancellation fee; and the lead card in that it is misleading on its face. All three of the above claims are within the class of cases to which subdivision 12 of section 63 applies, and there is a sufficient showing of repeated fraud so as to warrant action pursuant to that section.

Article 10-A is applicable to respondent's lay-away plan (*De Rouville* v. *E. F. G. Baby Prods. Co.*, 69 Misc 2d 252, affd. 40 A D 2d 736, *supra*). Consequently, the respondent is required by law to furnish its customers with the notice required by section 428 of the Personal Property Law and the failure to do so constitutes a repeated illegal act within the meaning of subdivision 12 of section 63. Respondent's defense that it acted in good faith, even if believable, is irrelevant as to the question of the illegality of the act and to the question of further violations; even if respondent stops violating article 10-A and provides notice as required, this would not restrict restraint from the further violation of the statute (*Matter of State of New York* v. *Hotel Waldorf-Astoria Corp.*, 67 Misc 2d 90). Moreover, a trial on the issue of notice is not necessary since the continued failure to give the required notice can only be viewed as an illegal act as a matter of law.

Similarly, the 50% cancellation fee utilized in respondent's contract is in direct violation of subdivision (3) of section 429 of the Personal Property Law which provides that a consumer may only be charged a maximum of 5% of the cash price as a cancellation fee and, as a result, it deliberately misleads consumers. Accordingly, the continued use of this cancellation fee in its present form is both a fraudulent and illegal act within the meaning of subdivision 12 of section 63 as a matter of law.

Finally, as to the lead card, appellant contends that it is fraudulent on its face and its use must therefore be enjoined.

Special Term held that there must be a trial as to its fraudulent nature, but we agree with the appellant and find no necessity for a trial here. The card is patently misleading in that it does not identify the respondent as the individual who sent it; that it does not inform the recipient that the parcel is a free gift; and that, on a whole, the card creates the impression that it is from some type of parcel delivery service, solely to lure prospective customers into admitting respondent's salesmen into their homes. Respondent does not deny that this deliberate vagueness is part of its marketing psychology but urges that all the statements on the card are true, that its product is a meritorious one and that failure to reveal the real purpose of the card is not a deceptive practice creating at most an atmosphere conducive to fraud which is not enough for injunctive relief (citing *Matter of People* v. *Compact Assoc.*, 22 A D 2d 129, affd. 17 N Y 2d 758). This argument ignores the fact that the card is not a potentiality for fraud, but is *in actuality,* misleading on its face. Subdivision 12 of section 63 of the Executive Law authorizes the appellant to seek injunctive relief against any repeated deception, misrepresentation or concealment and the only purpose in designing this card in this manner is to mislead the prospective customer. Nor does the fact that what is said is true prevent injunctive relief here since it is what is not said and should be said that makes the card misleading.

Accordingly, while Special Term correctly struck paragraph nine of the petition insofar as it sought to enforce affirmative compliance with article 10-A of the Personal Property Law and that part of the preliminary injunction which affirmatively ordered the respondent to give the notice required by section 428 of the Personal Property Law, it was erroneous to hold that the appellant could not seek to enjoin repeated violations of article 10-A when such violations amounted to fraudulent or illegal acts within the meaning of subdivision 12 of section 63 of the Executive Law. Furthermore, there are no real triable issues here, and the appellant is thus entitled to injunctive relief as a matter of law.

The order should be modified, on the law and the facts, by reversing the third ordering paragraph thereof, and, pursuant to subdivision 12 of section 63 of the Executive Law, judgment directed in favor of the petitioner permanently enjoining the respondent from engaging in the fraudulent and illegal acts and practices found herein, and, as so modified, affirmed, without costs.

STALEY, JR., J. P., GREENBLOTT and COOKE, JJ., concur.

Order modified, on the law and the facts, by reversing the third ordering paragraph thereof, and, pursuant to subdivision 12 of section 63 of the Executive Law, judgment directed in favor of the petitioner permanently enjoining the respondent from engaging in the fraudulent and illegal acts and practices found herein, and, as so modified, affirmed, without costs.