Charles McDANIEL and Faye McDaniel, Appellants,

v.

Sam W. PETTIGREW et al., Appellees.

No. 18852.

Court of Civil Appeals of Texas, Dallas.

April 15, 1976.

Rehearing Denied May 13, 1976.

David J. White, Stalcup, Johnson, Meyers & Miller, Dallas, for appellants.

Forrest Wm. Wagner, Pettigrew, Buckley & Wagner, Grand Prairie, for appellees.

CLAUDE WILLIAMS, Chief Justice.

Charles McDaniel and Faye McDaniel appeal from a summary judgment denying them any relief against Sam W. Pettigrew, George V. Delk, and John E. Henry in an action for cancellation and rescission of a contract, notes, deeds of trust, and lien agreements in connection with the purchase and sale of real property. In their petition, under count one, the McDaniels sought cancellation and rescission of a contract to purchase a lot with a residence to be constructed thereon, notes, security instruments, and other instruments in connection with such contract, alleging violation of Tex.Rev.Civ. Stat.Ann. art. 5069–13.01, et seq. (Vernon Supp.1975), known as the Home Solicitation Act. In their alternative count two the McDaniels sought the same relief based upon alleged misrepresentations and failure to perform the contract in question. The trial court sustained the motion for summary judgment filed by Pettigrew, Delk and Henry, and the McDaniels appeal. We affirm in part and reverse in part.

The record is without dispute that Charles and Faye McDaniel had been previously married and divorced and then decided to remarry on October 3, 1973. Either shortly before or after their remarriage, the McDaniels contacted Pat Watson, a licensed real estate broker in Grand Prairie, Texas, concerning the purchase of a home. They selected Pat Watson because she previously had negotiated the purchase of another house by the McDaniels. As a result of this contact, Pat Watson showed the McDaniels a number of houses and lots including an unimproved lot located at 1409 Egyptian

Street in Grand Prairie, Texas. This lot was owned by George Delk and John Henry, who were builders. Pat Watson had previously represented Delk and Henry in sales of homes built by them. She advised the McDaniels that Delk and Henry could build a house on the lot for the McDaniels. The McDaniels did not find a house plan which would suit their needs until Pat Watson showed them a set of plans on a home previously built by her husband. The McDaniels stated that they wanted a house built on the Egyptian Street lot to look just like the house built by Pat Watson's husband, except proportionately larger. Pat Watson and the McDaniels went over the plans and specifications and made changes in accordance with the desires of the McDaniels. Pat Watson then contacted Delk and Henry and returned to the McDaniels and advised them that Delk and Henry would sell them the lot and build the house like they wanted for a sum of $65,-000.

On October 12, 1973, Pat Watson took a contract of sale between Delk and Henry, as sellers, and Charles McDaniel et ux, as purchasers, to the McDaniels' apartment where Charles McDaniel executed it. McDaniel put up $3,000 as escrow deposit under the contract. On December 6, 1973, Pat Watson took to the McDaniels' apartment a mechanic's lien agreement and note for $70,000 to be executed by them to Delk and Henry so that the sellers could proceed with the construction of the house. Charles and Faye McDaniel executed both instruments at their residence. Construction on the house began about December 11, 1973. On January 14, 1974, a new contract of sale was executed by Charles McDaniel as purchaser, and Henry and Delk as sellers. This contract was the same as the original contract executed on October 12, 1973, with the exception that the McDaniels made a greater down payment and obtained a lower rate of interest.

The McDaniels were never informed of any right to cancel either of the two contracts or other instruments, and no type of notice of cancellation form was provided with any of these instruments.

The construction of the home was completed in April or May 1974, with the exception of a small amount of work to be done in a closet and the installation of some carpets in the front entry hall. When the sellers claimed the house was completed, the McDaniels went to the site and told Pat Watson that they refused to accept the house due to the failure of Delk and Henry to construct the same in a good workmanlike manner and in accordance with the plans and specifications agreed upon between the parties. Pat Watson informed Delk and Henry of the McDaniels' statement.

When the December 6, 1973, note became due on September 6, 1974, and the McDaniels refused to pay it, Mr. Henry requested the McDaniels sign a renewal note and a deed of trust, both dated September 6, 1974, stating that such instruments were needed in order to secure additional time to facilitate sale of the house to another party. Charles McDaniel testified that he told Mr. Henry that he would sign the renewal note, and Henry stated they would all work together to sell the house so that no one would lose any money. The McDaniels did sign the renewal notes and papers tendered by Mr. Henry. The McDaniels also allege in their petition that they signed the renewal obligations in reliance on a representation by Henry that such instruments would not be enforced against them. They contend that this representation was false because the sellers did intend to enforce them, and did post the property for foreclosure under the September 6, 1974, deed of trust. The McDaniels originally filed suit for rescission and injunctive relief against the deed of trust foreclosure. The district court denied the application for temporary injunction and this court affirmed without written opinion. Consequently, Delk and Henry proceeded with the sale and purchased the property themselves on May 6, 1975. Since the bid for the property was insufficient to pay the debt, Delk and Henry filed suit on May 28, 1975, seeking a

deficiency judgment against the McDaniels for an amount in excess of $42,000. This action is still pending.

### The Home Solicitation Act

In their first seven points of error, appellants Charles and Faye McDaniel contend that the trial court erred in rendering summary judgment against them because the record reveals material issues of fact concerning violations of Tex.Rev.Civ.Stat.Ann. art. 5069–13.01 through 13.06 which would render the transaction in question void.

The statute is entitled "Home Solicitation Transactions—Rights and Duties of Parties" and was enacted by the legislature on June 11, 1973. The statute gives the consumer the right to rescind a home solicitation transaction as defined in the act; requires certain information and forms to be given to the consumer at the time of the transaction; provides rights, duties, responsibilities, and liabilities of merchants, consumers, and other parties involved in such transactions; and provides penalties for violations. Since no Texas court has construed this statute this is a case of first impression. Although similar statutes have been passed by other states there is a paucity of decisions to guide us in construing the act.[1]

■ A careful study of the statute in question leads to the definite conclusion that the legislature obviously intended to provide protection to customers purchasing goods, services, or realty in which the merchant or person acting for him engages in a personal solicitation of the sale to the consumer at the residence of the consumer. Stated more simply the act was designed to protect residential occupants from high pressure door-to-door salesmen and allow a "cooling-off" period within which the sales contract could be rescinded. The legislature clearly delineated the purpose of the legislation in § (5)(A) of the article by defining "Home solicitation transaction" as meaning:

> [A] consumer transaction:
> (A) for the purchase of goods . . . or services . . . in which the merchant or person acting for him engages in a *personal solicitation* of the sale to the consumer *at a residence* and the consumer's agreement or offer to purchase is given at the residence to the merchant or person acting for him . . . . [Emphasis added.]

It obviously centers attention upon the personal solicitation by the seller at the residence of the buyer. The next paragraph of the act, § (5)(B), deals with the purchase of realty at the consumer's residence but specifically provides that "it does not include a sale of realty in which transaction the purchaser is represented by a licensed attorney *or in which the transaction is being negotiated by a licensed real estate broker* . . . ." [Emphasis added.] The remaining portions of the act are specific in providing that where the act is applicable the consumer has the right to cancel the agreement within three days; that the seller must furnish the consumer with a contract which contains a statement notifying

---

1. New York passed a home solicitation act which purpose is stated as follows: "The purpose of this act is to afford consumers, subjected to high pressure door-to-door sales tactics, a 'cooling-off' period." N.Y.Pers.Prop.Law § 425 (McKinney Supp.1975). Two cases in the New York jurisdiction have interpreted this statute. In both cases the seller or his agents solicited the buyer at the buyer's home either by mail or telephone requesting that salesmen be allowed to come to the buyer's home. In these cases the court held the Home Solicitation Act was applicable. *DeRouville v. E. F. G. Baby Products Co.,* 67 Misc.2d 508, 324 N.Y.S.2d 109 (1971), *aff'd,* 69 Misc.2d 252, 329 N.Y.S.2d 470 (1972), *aff'd,* 40 A.D.2d 736, 336 N.Y.S.2d 455 (1972); *Lefkowitz v. E. F. G. Baby Products Co.,* 40 A.D.2d 364, 340 N.Y.S.2d 39 (1973). Arizona passed the Home Solicitation Sales Act, Ariz.Rev.Stat. §§ 44–5001 to 44–5008 (West Supp.1975), which is similar to the Texas statute. The Arizona Supreme Court has ruled that the statute regulating door-to-door sales is constitutional and not in violation of property rights so great as to outweigh the state's right to protect its citizens. *State v. Direct Sellers Ass'n,* 108 Ariz. 165, 494 P.2d 361 (1972). Thirty-five other jurisdictions have passed different versions of the same type of legislation. Uniform Consumer Credit Code, 1 CCH Consumer Credit Guide ¶ 4770 (1976).

him of his right to cancel; and that a violation of the act renders the sale void.

In arriving at our conclusions concerning the applicability of this statute to the facts presented to us, we are governed by the statutory admonition that we shall look diligently for the intentions of the legislature, keeping in view at all times the old law, the evil and the remedy. Tex.Rev. Civ.Stat.Ann. art. 10(6) (Vernon 1969). Under this article the provisions of the statute must be liberally construed with a view to affect their objects and that in arriving at the intent and purpose of the law it is proper to consider the history of the subject matter involved, the end to be attained, the mischief to be remedied, and the purpose to be accomplished. *Magnolia Petroleum Co. v. Walker,* 125 Tex. 430, 83 S.W.2d 929, 934 (1935).

With these rules to govern us we have concluded, and so hold, that the summary-judgment proof in this record demonstrates the inapplicability of the statute and, therefore, appellant's contention of statutory violations must be overruled.

This transaction is one for the sale of realty. Since the transaction was negotiated by a licensed real estate broker, it falls directly within the exclusion of § (5)(B) of the statute. It is undisputed that Pat Watson was a licensed real estate broker who negotiated the transaction which resulted in the contract between the McDaniels and the builders. It is significant to observe that the real estate exclusion provision draws a distinction between a transaction where the purchaser is represented by a licensed attorney and one in which the "transaction is being negotiated by a licensed real estate broker." The very wording of the statute indicates the intention of the legislature to place the real estate broker in a different category from an attorney representing one or the other of the parties. Although appellants argue that Pat Watson was the agent of Delk and Henry, we have found no evidence to support their contention. Here, a real estate broker was undoubtedly negotiating the transaction and, therefore, the exclusion is manifestly applicable.

Appellants attempt to avoid the effect of this real estate exclusion by contending that the contract made by them was not a realty contract but an agreement for services to be performed, that is, the building of a house. We cannot agree. An overview of the summary-judgment proof clearly demonstrates that what the McDaniels wanted was a home. This is not a case where a party previously owns property and executes a contract to have a house constructed. In one transaction, the McDaniels contracted to buy a lot upon which a house was to be built. The house, when built, would become a part of the realty since there was no agreement that it would remain personalty. *Cleveland v. Milner,* 141 Tex. 120, 170 S.W.2d 472, 474–75 (Tex.Com. App.1943, opinion adopted). In determining whether the improvements placed upon land constitutes fixtures or removable chattels, courts should determine whether there has been a real or constructive annexation, whether the article is adaptable to the use or purpose of the realty and whether it was the intention of the party making the annexation that the chattel should be a permanent accession to the freehold. *Clark v. Clark,* 107 S.W.2d 421, 424 (Tex.Civ.App.— Texarkana 1937, no writ), citing *Hutchins v. Masterson & Street,* 46 Tex. 551, 26 Am. Rep. 286, 288 (1877). The presumption is that the house is part of the land. *Calvert v. Welch,* 369 S.W.2d 840, 842 (Tex.Civ.App. —Texarkana 1963, no writ). When we apply these authorities here there is no question but that the parties intended that the house to be built upon the lot was to become a part of the realty.

Moreover, assuming arguendo that the realty exclusion does not apply, we do not agree with appellant that the contract of sale, notes, lien agreements, and other instruments sought to be canceled and rescinded in this litigation were executed as a result of a personal solicitation by the seller at the residence of the consumer as contemplated by the statute. The facts are undisputed that the McDaniels desired to buy a home and sought out the services of Pat Watson, a licensed real estate broker, to

satisfy their desires. Thus the McDaniels were the ones who conducted the "solicitation." While it is true that after a search for properties and negotiations leading to the construction of a home, the final draft of the contract, and related papers, were presented to the McDaniels for their signature at their place of residence, this does not fall within the prohibitive category of the Home Solicitation transaction because these are not acts of solicitation.

Giving the Home Solicitation Act the broadest and most liberal interpretation possible we conclude that appellants cannot claim a violation of the statute as a basis of cancellation and rescission of the instruments in question.

Our holding necessarily overrules appellants' points eight and nine which are dependent upon the applicability of the Home Solicitation Act.

### Common-Law Cause of Action—Misrepresentation

■ In their eleventh point of error, appellants argue that there existed a disputed issue of material fact as to whether Delk and Henry agreed that the deed of trust note signed September 6, 1974, would not be enforced against the McDaniels, and they seek rescission of the instruments because of the McDaniels' reliance upon this misrepresentation. In their petition, the appellants alleged that Delk and Henry requested them to sign the September 6, 1974, note and deed of trust upon the representations that such note and deed of trust were needed to secure additional time to facilitate the sale of the house and would not be enforced against the McDaniels. We overrule this contention. Where statements or representations are said to have been fraudulent but are in the nature of a promise of an act to be performed in the future, and not statements of existing facts, such statement cannot be legally said to be a fraudulent misrepresentation unless it is alleged and proved that at the time the statement or promise was made the person making the same did not intend to perform it. The mere failure to perform a promise is not of

itself evidence of an intent not to perform. *Rapid Transit Ry. v. Smith,* 98 Tex. 553, 86 S.W. 322, 333 (1905); *Morgan v. Box,* 449 S.W.2d 499, 504 (Tex.Civ.App.—Dallas 1969, no writ); and *Precision Motors v. Cornish,* 413 S.W.2d 752, 756 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.). The summary judgment on this cause was properly rendered because the evidence failed to establish a genuine issue of fact as to the essential element of lack of intent on the part of the appellees to perform any promise which might have been made by them at the time of the execution of the instruments in question. For these reasons we overrule appellants' point eleven.

### Common-Law Cause of Action—Breach of Contract

■ In their tenth point of error appellants contend that the trial court erred in rendering summary judgment because there existed a disputed issue of material fact as to whether Delk and Henry failed to perform the construction of the house in a good and workmanlike manner and in accordance with the plans and specifications agreed upon by the parties. It is undisputed that in the contract originally signed by the parties Delk and Henry agreed to construct a three-bedroom, three-and-a-half bath, single-story, single-family brick veneer dwelling with double attached garage, covered patio, "all according to plans and specifications heretofore agreed upon." The deposition testimony before the trial court reveals a number of instances in which Delk and Henry failed to construct a house in accordance with the plans and specifications. The house as built did not include archways in the front; a roof on one side of the house was much smaller than the other side; three windows were built in front of the house instead of four as agreed upon; no archways were provided in the dining room; and the windows in the entry hall and the planter underneath the windows were constructed other than as agreed. Furthermore, Charles McDaniel testified that the workmanship of the house was not of the quality agreed upon. Appel-

lees do not question the existence of fact issues concerning the failure to build the house in accordance with plans and specifications but contend that they are immaterial because the only cause of action pleaded by appellants was for cancellation and rescission based upon misrepresentation and not upon material breach of the contract. We do not agree.

The rule is well settled that while the contract remains wholly executory—i. e., no part performance that would render such relief inequitable, a partial breach of a material part thereof is sufficient to authorize an equitable action for rescission, notwithstanding rescission will ordinarily be denied when there is an adequate remedy at law. *Hausler v. Harding-Gill Co.*, 15 S.W.2d 548, 549 (Tex.Com.App.1929, jdgmt. adopted). While the contract remains wholly executory the party has the option of requesting rescission or holding the adverse party to the contract and requesting damages. *Greenwall Theatrical Circuit Co. v. Markowitz*, 97 Tex. 479, 79 S.W. 1069, 1071 (1904); *Cantu v. Bage*, 467 S.W.2d 680, 682 (Tex.Civ.App.—Beaumont 1971, no writ).

■ The summary-judgment proof is conclusive that at the time the McDaniels refused to accept the house it had been completed, with a few minor exceptions. However, a disputed issue of fact exists as to whether the builders complied with the terms of the contract. Thus, the contract is not wholly executory. There has been performance to an extent that renders the relief of rescission inequitable. While the appellants did not seek damages or correctly plead breach of warranty or failure of performance of the contract, they did present summary-judgment proof which would create an issue of fact if pleaded. In such a situation our supreme court in *Womack v. Allstate Insurance Co.*, 156 Tex. 467, 296 S.W.2d 233, 237 (1956) has held that a summary judgment is improperly rendered. It was there held that when a summary-judgment record discloses facts which show that an amendment to the pleadings of the opposite party will render the position of the moving party untenable under substan-

tive law, it cannot be said that the movant has established his right to judgment as a matter of law, and summary judgment is, therefore, improper. *Insurance Company of North America v. Cash*, 475 S.W.2d 912, 913 (Tex.1971); *Viracola v. Dallas International Bank*, 508 S.W.2d 472 (Tex.Civ.App.—Waco 1974, writ ref'd n. r. e.); *Nix v. Davis*, 358 S.W.2d 225, 227 (Tex.Civ.App.—Houston 1962, no writ). In the light of this well-established rule of law we hold that appellees have failed to meet the burden imposed upon them to establish, as a matter of law, that there is no genuine issue of fact as to one or more essential elements of appellants' cause of action. *Farley v. Prudential Insurance Co.*, 480 S.W.2d 176, 178 (Tex.1972); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

The judgment of the trial court which denies relief to appellants on the basis of the Home Solicitation Act and misrepresentation is affirmed. The judgment is reversed and the cause remanded solely on the issue of breach of contract and damages.

Affirmed in part and reversed and remanded in part.