

OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

July 14, 1999

Mr. Wayne Thorburn
Administrator
Texas Real Estate Commission
P.O. Box 12188
Austin, Texas 78711-2188

Opinion No. JC-0078

Re: Whether chapter 37 of the Business and Commerce Code applies to unsolicited telephone calls by licensed residential service companies to consumers for the purpose of selling residential service contracts and related questions (RQ-1166)

Dear Mr. Thorburn:

You ask whether chapter 37 of the Business and Commerce Code, regulating telephone solicitations, applies to solicitations by residential service companies selling residential service contracts to consumers. You also ask whether chapter 39 of the Business and Commerce Code, relating to consumers' rights to cancel certain consumer transactions, applies to such solicitations by real estate brokers and real estate salespersons licensed by the Texas Real Estate Commission (the "Commission"). We conclude that chapter 37 applies to unsolicited telephone calls made by a residential service company for the purpose of selling residential service contracts. However, an unsolicited telephone call to sell a new contract to a consumer who held or holds such a contract is excepted from that chapter's requirements dealing with when and how consumer telephone calls must be made. We also conclude that chapter 39 applies to residential service contract solicitations by a licensed real estate broker or salesperson at a home being listed or shown to a prospective buyer if (1) the broker or salesperson is acting as the agent for the residential service company, and (2) the purchaser agrees to purchase the services at the home or a place other than the merchant's place of business. However, such a transaction may be excepted from chapter 39 if the parties engaged in prior negotiations at a fixed business establishment.

Residential service companies are licensed and regulated by the Commission under the Residential Service Company Act (the "Act"), TEX. REV. CIV. STAT. ANN. art. 6573b (Vernon Supp. 1999). Under the Act, any person "who issues and performs, or arranges to perform, services pursuant to a residential service contract" is a residential service company. *Id.* § 4(b). A "residential service contract" is a contract "whereby, for a fee, a person undertakes, for a specified period of time, to maintain, repair, or replace all or any part of the structural components, the appliances, or the electrical, plumbing, heating, cooling, or air-conditioning systems of a residential property." *Id.* § 4(a). The residential service company agrees to provide the services contracted for when requested by the holder of the contract. *Id.* § 15(a)(3)(B)(v), (vi).

You tell us that residential service contracts are generally offered by real estate brokers and salespersons to sellers or buyers in connection with the sale of a home, but they are also marketed by service companies directly to consumers by telephone and mail. We understand that the seller of the home typically purchases the contract, usually for a term of one year, for the benefit of the buyer and pays the fee from the proceeds of the sale. Thus, the initial contract is not sold by telephone or mail solicitation by the service company but by the real estate broker or salesperson involved in the sale of the home. After the initial period of coverage, however, the home buyer may "renew" the contract. The renewal or sale of a new contract, you tell us, is done by mail and telephone solicitation by the service companies. We understand your request is prompted by an increase in the direct sale of contracts by service companies to consumers who had previously purchased such contracts.

Your first two questions relate to chapter 37 of the Business and Commerce Code. You first ask if chapter 37 of the Business and Commerce Code applies to an unsolicited telephone call made by an employee or agent of a licensed residential service company to a consumer for the purpose of selling a residential service contract. If chapter 37 applies, you next ask, "what are the rights of a consumer and the obligations of a licensed residential service company respecting notice, cancellation, and refund of the fee paid for the residential service contract?" *See* Letter from Mr. Wayne Thorburn, Administrator, Texas Real Estate Commission, to Honorable Dan Morales, Attorney General (July 22, 1998) (on file with Opinion Committee) [hereinafter Request Letter of 7/22/98]. Based on the information provided, we understand the solicitation that you first ask about is by the residential service company that had previously sold the residential service contract to the seller of a home for the benefit of the home buyer; the consumer being solicited is the home buyer and holder of the residential service contract. Additionally, we assume the rights and obligations of the soliciting residential service company and the consumer that you ask about in your second question are only those under chapter 37. Because the two questions require us to review chapter 37 in its entirety, we address them together.

Chapter 37 regulates telephone solicitations. The chapter applies to a person who makes an unsolicited telephone call to a residential telephone number to solicit the sale of consumer goods or services, extend credit for a consumer good or service, obtain information that will or may be used to directly solicit a sale of goods or services, or to extend credit for the sale. *See* TEX. BUS. & COM. CODE ANN. §§ 37.01(4) (defining "consumer telephone call"), (5) (defining "telephone solicitor") (Vernon Supp. 1999). Section 37.02(a) provides that the telephone solicitor may not make such a call unless the solicitor immediately identifies himself or herself, the business on whose behalf the call is being made, and the purpose of the call, *id.* § 37.02(a)(1); the call is made after 9:00 a.m. but before 9:00 p.m. on a weekday or Saturday and after 12:00 noon but before 9:00 p.m. on a Sunday; *id.* § 37.02(a)(2); and, if an automated dial-announcing device is used, where possible, the call is disconnected thirty seconds after it is terminated by either the consumer or the telephone solicitor, *id.* § 37.02(a)(3).[1]

_____

[1]House Bill 450, enacted by the 76th Legislature and effective September 1, 1999, requires such calls to be
(continued...)

Certain telephone solicitations are exempted from the three requirements of section 37.02(a). Under section 37.02(b), a consumer telephone call is not subject to those requirements if the call is made:

> (1) in response to the express request of the consumer;

> (2) primarily in connection with an existing debt or contract for which payment or performance has not been completed at the time of the call; or

> (3) to a consumer with whom the telephone solicitor has a prior or existing business relationship.

*Id.* § 37.02(b).

Finally, section 37.03 prohibits a telephone solicitor from charging to consumer credit card accounts unless one of the following requirements are met: the seller (1) provides for cancellation of services upon notice from the consumer not later than the seventh day after the date the consumer "receives the goods or services" and a full refund not later than the thirtieth day after the consumer cancels the contract for services not performed or a pro rata refund for any services not yet performed; (2) provides to and receives from the consumer a written contract describing the services, the total price, the name, address, and business phone of the company and any terms or conditions affecting the sale; or (3) the seller is exempt from federal taxes under section 501(c)(3) of the Internal Revenue Code. *Id.* § 37.03 (Vernon Supp. 1999).

Although chapter 37 has been in effect since 1992,[2] we have found no Texas cases construing its provisions. However, based on the plain language of the statute, we conclude in answer to your first question that chapter 37 applies to unsolicited telephone calls by a residential service company for the purpose of selling a new contract. *See id.* §§ 37.01(4) (defining "consumer telephone call"), (5) (defining "telephone solicitor"); TEX. REV. CIV. STAT. ANN. art. 6573b, § 4(a) (Vernon Supp. 1999) (definition of "residential service contract"). But the section 37.02(a) provisions dealing with when and how the calls must be made do not apply to such calls to a consumer who held or holds a residential service contract issued by that company. Section 37.02(b)(3) specifically provides that subsection (a) does not apply to a consumer telephone call if made "to a consumer with whom the telephone solicitor has *a prior or existing business relationship.*" (Emphasis added.) Whether the telephone calls soliciting the sale of a new contract are made after or before the initial contract term expires, the calls fall within the exception of subsection (b)(3).

---

[1](...continued)
disconnected five seconds after the call is terminated. *See* Act of May 26, 1999, 76th Leg., R.S., H.B. 450, § 1 (to be codified at TEX. BUS. & COM. CODE ANN. § 37.02(a)(3)).

[2]*See* Act of May 26, 1991, 72d Leg., R.S., ch. 494, § 1, 1991 Tex. Gen. Laws 1736.

Because section 37.02(b)(3) exempts qualifying calls only from the requirements of section 37.02(a), however, the section 37.03 restrictions on charges to consumer credit card accounts would still apply. Consequently, if a residential service contract is sold by a telephone solicitation, the residential service company may not make any charges to the consumer's credit account unless the company complies with those restrictions. Accordingly, in answer to your second question, the rights of a consumer and the obligations of a licensed residential service company with respect to notice, cancellation, and refund are as set out in section 37.03 if an amount is to be charged to the consumer's credit account.

We turn now to your next three questions, which relate to chapter 39 of the Business and Commerce Code. You first ask if chapter 39 applies to "solicitations of the sale of a residential service contract by a licensed real estate broker or salesperson at a location other than the licensee's office, such as at a home being listed or shown to a prospective buyer?" *See* Request Letter of 7/22/98. Based on the information provided, we understand you to ask about the sale of a contract providing initial residential service coverage when a home is purchased.

Chapter 39 gives consumers the opportunity to cancel certain transactions. A consumer may cancel a transaction subject to the statute before midnight of the third business day after the consumer signs an agreement or offers to purchase real or personal property, services, money, or credit for personal or household purposes. *See* TEX. BUS. & COM. CODE ANN. §§ 39.001(1) (definition of "consumer"), 39.003 (right to cancel) (Vernon Supp. 1999). It requires a merchant to provide a consumer a receipt or copy of a contract at the time it is executed and to include in it certain information and forms of notices of cancellation. *Id.* § 39.004(a) - (c). Additionally, the statute sets out the rights, duties and obligations of a merchant and a consumer with respect to compensation for services and retention and return of property, *id.* §§ 39.005, .006, .007, and acts that constitute violations of the Act and the penalties for such violations. *Id.* § 39.008. Among other penalties, a sale or contract made in violation of the statute is void. *Id.* § 39.008(b).

Chapter 39 does not limit its application to door-to-door salesmen or contracts made at the consumer's home although originally enacted for that purpose. *See* Act of May 27, 1995, 74th Leg., R.S, ch. 926, § 1, 1995 Tex. Gen. Laws 4649 (redefining "home solicitation transaction" to include transaction in which merchant engages in personal solicitation of consumer at place other than merchant's place of business and not only residence); *McDaniel v. Pettigrew*, 536 S.W.2d 611, 614 (Tex. Civ. App.–Dallas 1976, writ ref'd n.r.e.) (discussing original intent). It generally applies to any consumer transaction consummated at a place other than the seller's place of business. Section 39.002 sets out the transactions to which chapter 39 applies and provides as follows:

(a) This chapter applies only to a consumer transaction in which the merchant or the merchant's agent engages in a personal solicitation of a sale to the consumer at a place other than the merchant's place of business, and the consumer's agreement or offer

to purchase is given to the merchant or the merchant's agent at a place other than the merchant's place of business:

> (1) for the purchase of goods or services for consideration that exceeds $25 payable in installments or in cash; or

> (2) for the purchase of real property for consideration that exceeds $100 payable in installments or in cash.

(b) Notwithstanding Subsection (a), this chapter does not apply to:

> (1) a purchase of farm equipment;

> (2) an insurance sale regulated by the Texas Department of Insurance;

> (3) a sale of goods or services made:

>> (A) under a preexisting revolving charge account or retail charge agreement; or

>> (B) after negotiations between the parties at a business establishment at a fixed location where goods or services are offered or exhibited for sale; or

> (4) a sale of real property if:

>> (A) the purchaser is represented by a licensed attorney;

>> (B) the transaction is negotiated by a licensed real estate broker; or

>> (C) the transaction is negotiated at a place other than the consumer's residence by the person who owns the property.

TEX. BUS. & COM. CODE ANN. § 39.002 (Vernon Supp. 1999). "Consumer transaction" for the purposes of section 39.002(a) is "a transaction in which one or more of the parties is a consumer." *Id.* § 39.001(2). "Consumer," in turn, is "an individual who seeks or acquires real or personal property, services, money, or credit for personal, family, or household purposes[,]" and "merchant" is "a party to a consumer transaction other than a consumer." *Id.* § 39.001(1), (3). Lastly,

"merchant's place of business," in relevant part, is the "merchant's main or permanent branch office or local address." *Id.* § 39.001(4).

Sale of a residential service contract on its face partially satisfies the consumer transaction definition of section 39.002(a) in that a consumer in such transaction seeks or acquires services and goods for household purposes. *See* TEX. REV. CIV. STAT. ANN. art. 6573b, § 4(a) (Vernon Supp. 1999) (definition of "residential service contract"). To constitute a consumer transaction to which chapter 37 applies, however, it must also involve (1) a solicitation by a "merchant or merchant's agent" and (2) an agreement to purchase at a place other than the merchant's place of business. We address each of these more complex and factually based requirements in turn.

It is not clear that the real estate broker or salesperson is a "merchant or merchant's agent." The few Texas cases that have considered the statute, have not construed this term. *See American Quality Roofing v. Ipock, Inc.*, 730 S.W.2d 470 (Tex. App.–Fort Worth 1987, no writ) (roof repair contract made at consumer's home subject to statute); *Langston v. Brewer*, 649 S.W.2d 827 (Tex. App.–Fort Worth 1983, no writ) (remodeling contract not subject to statute because parties had engaged in prior transaction, consumer contacted merchant, and parties had negotiated contract away from consumer's residence before its execution); *Homquest v. Priesmeyer*, 574 S.W.2d 173 (Tex. Civ. App.–Houston [1st Dist.] 1978, no writ) (architect contract not subject to statute because consumer sought architect's services and engaged in negotiations away from consumer's home before contract was prepared); *McDaniel v. Pettigrew*, 536 S.W.2d 611 (Tex. Civ. App.–Dallas 1976, writ ref'd n.r.e.) (statute does not apply to real estate transaction contract negotiated by licensed real estate broker; additionally, consumers not builders engaged in solicitation). Based on the statutory language, the broker or salesperson is not the "merchant" as defined in the statute, because the party other than the consumer to the residential service transaction is the residential service company. But if the broker or salesperson solicits the sale of the contract, he or she is acting on behalf of the residential service company and likely would be considered the merchant's agent. *See McDaniel*, 536 S.W.2d at 615 (provisions of statute must be liberally construed to effect its object); I OXFORD ENGLISH DICTIONARY 248 (2d ed. 1989) (defining "agent," as relevant here, as "one who acts for another"); BLACK'S LAW DICTIONARY 59 (5th ed. 1979) (defining "agent" generally as one who represents or acts for another under contract or agency relation). Whether a person acts in any particular case as an agent for another, however, is a factual determination.

Additionally, to constitute a consumer transaction described by subsection (a), the seller or the prospective home buyer must also agree to purchase the residential services at the home being shown or at a place other than the merchant's place of business. Thus, if the home seller or the home buyer agrees to purchase the residential services at the home or at a place other than the merchant's place of business, the residential service sale solicitation is a consumer transaction described in section 39.002(a). The location where the agreement is given or the contract executed would necessarily vary with each case and its determination would therefore require a case-by-case analysis.

In sum, a residential service sale solicitation by a licensed real estate broker or salesperson at a home being listed or shown to a prospective buyer is a consumer transaction described in section 39.002(a) to which chapter 39 applies if the following criteria are met: (1) the broker or salesperson acts as the agent of the residential service company, and (2) the home seller or the home buyer agrees to purchase the services at the home being shown or at a place other than the merchant's place of business.

But a residential service contract sale that is a consumer transaction under section 39.002(a) to which chapter 39 otherwise applies, might be, in certain circumstances, excluded from the application of chapter 39 under section 39.002(b).

A residential service contract sale is plainly not the purchase of farm equipment or made under a preexisting revolving or retail charge account. Nor is such a contract the purchase of real property. Rather, the contract is for the sale of residential repair, maintenance, and replacement services that may result in improvements to realty or in installation of items that may become affixed to the realty, but it is not for the sale of the realty itself. *See* TEX. REV. CIV. STAT. ANN. art. 6573b, § 4(a) (Vernon Supp. 1999). Although we found no cases in Texas or in other jurisdictions that deal with residential service or similar contracts, we note that home remodeling or repair contracts, which also result in improvements to realty or in installation of items that become affixed to a home, have generally not been excepted under the realty exception to home solicitation statutes. *See American Quality Roofing, Inc.*, 730 S.W.2d 470 (roof repair contract subject to statute); *Langston*, 649 S.W.2d 827 (remodeling of garage as beauty shop excepted from statute because of prior relationship between parties); *R. Bauer & Sons Roofing & Siding, Inc. v. Kinderman*, 613 N.E.2d 1083 (Ohio Ct. App. 1992) (contract for installation of roof, windows and door not covered by realty exception); *Crystal v. West & Callahan, Inc.*, 614 A.2d 560 (Md. Ct. App. 1992) (contract to improve porch not covered by real estate exception even though it resulted in improvements to realty). Additionally, purchase of a residential service contract is optional and not a condition of the sale of the realty. TEX. REV. CIV. STAT. ANN. art. 6573b, § 11(e) (Vernon Supp. 1999). Therefore, purchase of the service contract is not such an integral part of the real property sale so as to constitute a sale of real property.

A residential service contract is also not an insurance sale regulated by the Texas Department of Insurance. The sale in question involves a sale of residential repair services and residential appliances and fixtures regulated by the Commission rather than an insurance sale regulated by the Texas Department of Insurance. *See id.* § 2(a) (provisions of insurance law not applicable to service company licensed under Residential Service Company Act; provisions of Act inapplicable to insurance company licensed and regulated by insurance laws of state), (b) (Act inapplicable to 'home warranty insurance' as defined by TEX. INS. CODE ANN. art. 5.53-A, § 2 (Vernon 1981)).

While not a sale of farm equipment, real property, or insurance, or a sale made under a preexisting revolving or retail charge account, a residential service contract sale may, nonetheless, fall under section 39.002(b)(3)(B). Subsection (b)(3)(B) excludes the sale of services "made after negotiations between the parties at a business establishment at a fixed location where goods or

services are offered or exhibited for sale." Again, whether the parties have engaged in such negotiations before the sale of the residential services would vary in each case and its determination would therefore require a case-by-case analysis.

Thus, a solicitation for a residential service contract sale by a licensed real estate broker or salesperson otherwise subject to chapter 39, might, nevertheless, be excluded from the application of chapter 39 if the parties engaged in prior negotiations at a fixed business establishment where the goods and services are offered for sale.

If chapter 39 applies, you next ask whether a licensed residential company must include in the residential service contract the statutory notice and cancellation form required under section 39.004. Any document pertaining to a consumer transaction provided to a consumer must contain a statement, substantially in the form provided by the statute, that the buyer has the right to cancel the transaction at any time before midnight of the third business day after the date of the transaction. TEX. BUS. & COM. CODE ANN. § 39.004(b)(4) (Vernon Supp. 1999). Additionally, the document must include a duplicate notice-of-cancellation form setting forth the buyer's right to cancel within the three-day period; the buyer's right to have any property traded in or payment made and any negotiable instrument executed by the buyer returned within ten days of receipt of the cancellation notice; the buyer's obligation to return any goods delivered under the contract; the buyer's right to retain the goods under certain circumstances; and directions regarding what the buyer must do with the form provided to cancel the transaction. *Id.* § 39.004(c).

Generally, if a transaction is a consumer transaction governed by chapter 39, the statutory notice and cancellation provisions of section 39.004 do apply. A document need not, however, include the forms and notices required under that section in certain circumstances. First, the "use of the forms and notices of the right to cancel prescribed by the Federal Trade Commission's trade-regulation rule providing a cooling-off period for door-to-door sales constitutes compliance with th[e] section." *Id.* § 39.004(d). Second, a transaction in which the contract price does not exceed $200 is deemed to comply with the notice requirements if:

> (1) the consumer may at any time cancel the order, refuse to accept delivery of the goods without incurring any obligation to pay for them, or return the goods to the merchant and receive a full refund of the amount the consumer has paid; and

> (2) the consumer's right to cancel the order, refuse delivery, or return the goods without obligation or charge at any time is clearly and conspicuously set forth on the face or reverse side of the sales ticket.

*Id.* § 39.004(e).

Assuming the transaction you ask about is a consumer transaction to which chapter 39 applies, the residential service contract must include the notice and cancellation form required by section 39.004 unless the following requirements are met: (1) the contract includes forms and notices required by the Federal Trade Commission's trade-regulation rule with respect to door-to-door sales, or (2) the contract price does not exceed $200 and the consumer may at any time cancel the contract and receive a full refund, which cancellation right is "clearly and conspicuously" set forth in the contract. *See* 16 C.F.R. §§ 429.0, 429.1-.3 (1998) (Rule Concerning Cooling-Off Period for Sales Made at Homes or at Certain Other Locations).

Finally, if chapter 39 applies, you ask "would a licensed residential service company violate the Code if it provided a consumer with a cancellation period greater than three days or deleted language relating to the sale of goods?" *See* Request Letter of 7/22/98.

Section 39.003 gives the consumer the right to cancel "*not later than* midnight of the third business day after the date the consumer signs an agreement or offer to purchase." TEX. BUS. & COM. CODE ANN. § 39.003 (Vernon Supp. 1999) (emphasis added). Section 39.008(a)(1)(D) provides that a merchant may not fail to include in the form of cancellation prescribed by the statute "*a date not earlier than* the third business day after the date of the transaction by which the consumer must give notice of cancellation." *Id.* § 39.008(a)(1)(D) (emphasis added).

No Texas case has considered whether providing a cancellation period greater than three days violates the above statutory provisions. However, based on the purpose of the statute and its literal language, we believe that the provision of a cancellation period greater than three days does not violate chapter 39. The statute's purpose is to protect consumers by giving them *at least* a three-day period in which to cancel a contract executed pursuant to a personal solicitation at a place other than the seller's place of business. Thus, the consumer is entitled to at least three days. Although the consumer is not entitled to more than a three-day cancellation period, clearly a seller may choose to provide more. Providing the consumer additional protection does not, in our opinion, contravene the statute's minimum protective measures.

You also ask whether a residential service company would violate chapter 39 if it deleted language with respect to the sale of goods in a contract. As discussed above, section 39.004 requires that a contract subject to chapter 39 contain a notice of cancellation in the form provided in the statute. Subsection (c)(3) of section 39.004 sets out the language to be included in the form, including two paragraphs dealing with the consumer's rights and obligations with respect to return of any goods delivered under a contract upon cancellation of the contract.

Again, no Texas case has considered whether deleting a portion of the section 39.004(c)(3) language violates chapter 39. However, we note that there is no statutory provision for deleting or modifying the required language. The notice required here is different from that for the deadline to cancel. The form in the latter instance gives the discretion to include a date that is later than the required minimum three days. *See id.* § 39.008(a)(1)(D). But there is no similar discretion to modify the section 39.004(c)(3) language. Accordingly, assuming a residential service contract is

subject to chapter 39, we conclude the statutorily required language with respect to goods must be included in the notice of cancellation in the contract. Therefore, deleting such language would violate the statute.

## S U M M A R Y

Chapter 37 of the Business and Commerce Code applies to unsolicited telephone calls made by a residential service company for the purpose of selling residential service contracts. Accordingly, the rights of a consumer and the obligations of a licensed residential service company with respect to notice, cancellation, and refund are as set out in chapter 37 if an amount is to be charged to the consumer's credit account. However, an unsolicited telephone call to sell a new contract to a consumer who held or holds such a contract is excepted from chapter 37's requirements dealing with when and how consumer telephone calls must be made.

Chapter 39 of the Business and Commerce Code applies to residential service contract solicitations by a licensed real estate broker or salesperson at a home being listed or shown if (1) the broker or salesperson is acting as the agent for the residential service company, and (2) the purchaser agrees to purchase the services at the home or a place other than the merchant's place of business. However, such a transaction may be excepted from chapter 39 if the parties engaged in prior negotiations at a fixed business establishment.

If a transaction is subject to chapter 39, the residential service contract must include the notice and cancellation form as required by section 39.004. A residential service contract subject to chapter 39 that provides a cancellation period greater than three days would not violate chapter 39. A residential service contract subject to chapter 39 that does not include the statutorily required language with respect to the return of goods sold would violate chapter 39.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Sheela Rai
Assistant Attorney General