OPINION OF THE COURT
Marilyn Shafer, J.
Petitioner, the People of the State of New York, by Eliot Spitzer, Attorney General of the State of New York, moves, pursuant to Executive Law § 63 (12) and General Business Law § 349, for an order permanently enjoining respondent Network Associates, Inc., doing business as McAfee Software (Network Associates), from engaging in allegedly fraudulent, deceptive and illegal acts and practices, and directing (1) respondent to provide a sworn certified statement indicating the number of instances in which software was sold on discs or through the Internet which contained the alleged misrepresentations; (2) a judgment, pursuant to General Business Law § 350-d, based upon the sum of 500 for each instance of such practice; (3) a judgment in the amount of $2,000 for costs, pursuant to CPLR 8303 (a) (6); and (4) respondent to notify petitioner within 30 days prior to making any representation to customers that relates to the right to review, test or criticize any of the respondent’s software products.
Network Associates is a Delaware limited liability company engaged in the business of developing, selling and marketing a range of software products, including the popular McAfee anti-virus and firewall software named VirusScan and Gauntlet. Network Associates sells its products over the Internet and at various retail locations. Network Associates included on the face of many of its software diskettes and on its download page on the Internet the following restrictive clause:
“Installing this software constitutes acceptance of the terms and conditions of the license agreement in the box. Please read the license agreement before installation. Other rules and regulations of installing the software are:
“a. The product can not be rented, loaned, or leased — you are the sole owner of this product.
“b. The customer shall not disclose the result of any benchmark test to any third party without Network Associates’ prior written approval.
“c. The customer will not publish reviews of this product without prior consent from Network *386 Associates, Inc.” (Affirmation of Kenneth M. Dreifach, exhibit 2.)
Network Associates’ form license agreement included with its software did not contain the restrictive clause. Furthermore, the form license agreement contained a merger clause which provides that it constitutes the entire agreement between the parties and supercedes any prior communications with respect to software and documentation. The form agreement also stated that it may be modified only by a written addendum issued by an authorized representative of the company. (Id., exhibit 4, ^ 11.)
In July 1999, Network World Fusion, an online magazine, published a comparative review of six firewall software products, including Network Associates’ Gauntlet. It appears that Network World Fusion sought permission to publish the review of Gauntlet and that Network Associates denied it. Network World Fusion performed the review despite Network Associates’ refusal to allow the review of Gauntlet. In response to the unsatisfactory results of the review, Network Associates communicated its protest, quoting the language of the restrictive clause.
This conduct prompted an investigation by the office of the Attorney General of the State of New York. In the course of investigation, on January 30, 2001, the Attorney General requested the production of documents related to the restrictive clause. (Id., exhibit 7.) Respondent provided certain documents, and on September 18, 2001, counsel for respondent sent a letter to the Attorney General stating that respondent had discontinued the practice of including the restrictive clause. (Id., exhibit 9.) The letter also stated that respondent never withheld any consent to allow review of its software, and that it never enforced the restrictive clause. (Id.) Petitioner , alleges that despite the representations in this letter, an investigation by the office of Attorney General discovered that, as of January 2, 2002, respondent continued to utilize language similar to the restrictive clause. (Id., exhibit 10.)
Respondent states that in response to the inquiry by the Attorney General, on July 2001, it adopted the following new language replacing the restrictive clause in all of its new products:
“Network Associates, Inc. updates its products frequently and performance data for its products change. Before conducting benchmark tests regarding this product, contact Network Associates to *387 verify that you possess the correct product for the test and the then current version and edition of the product. Benchmark test[s] of former, outdated or inappropriate versions or editions of the product may yield results that are not reflective of the performance of the current version or edition of the product.” (Affirmation of Kent H. Roberts, exhibit F.)
Respondent states that because distributors and retailers still have some of the old software packages left over, respondent anticipates that it will take approximately six months to phase out the products containing the old restrictive clause. Respondent also states that because certain old software available for download from its Web site may contain the restrictive clause in embedded files, and because the removal of that clause would be very costly and complicated, it provides every consumer purchasing any of respondent’s products directly from its Web site with the notice that the restrictive clause has been replaced and superceded by the new language. (Id., exhibit G.) However, it appears that certain new products made by respondent contain restrictive language prohibiting publication of benchmark test results similar to that in the restrictive clause. Petitioner submits a copy of a license agreement printed in September 2001, which contains a clause which restricts publication of benchmark test results. (Reply affirmation of Kenneth Dreifach, exhibits B, C, 5.) Finally, respondent maintains that the prohibition of publication of any benchmark test results is accepted in the industry, and submits copies of license agreements by other software companies containing similar language.
Petitioner commenced this proceeding alleging deceptive acts and practices in violation of General Business Law § 349, and seeking a permanent injunction based on fraud and illegality of respondent’s acts, pursuant to Executive Law § 63 (12).
According to Executive Law § 63 (12),
“[W]henever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing *388 restitution and damages * * *. The word ‘fraud’ or ‘fraudulent’ as used herein shall include any device, * * * misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions.”
Petitioner argues that respondent’s acts of including the reference to “rules and regulations” in the restrictive clause are deceptive. The standard governing such special proceeding commenced by the Attorney General is one generally applied on a motion for summary judgment. (State of New York v Management Transition Resources, 115 Misc 2d 489, 492 [Sup Ct, NY County 1982].) The court may enjoin defendant’s improper practices, even where they are alleged to have been voluntarily discontinued, because a voluntary discontinuance provides no guaranty that such practices will not recommence. (Matter of State of New York v Person, 75 Misc 2d 252, 253 [Sup Ct, NY County 1973].)
Petitioner argues that the use of words “rules and regulations” in the restrictive clause is designed to mislead consumers by leading them to believe that some rules and regulations outside exist under state or federal law prohibiting consumers from publishing reviews and the results of benchmark tests. Petitioner also maintains that the language is deceptive because it may mislead consumers to believe that such clause is enforceable under the lease agreement, when in fact it is not enforceable under the terms of the lease. Petitioner argues that as a result consumers may be deceived into abandoning their right to publish reviews and results of benchmark tests.
According to General Business Law § 349,
“(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.
“(b) Whenever the attorney general shall believe from evidence satisfactory to him that any person, firm, corporation or association or agent or employee thereof has engaged in or is about to engage in any of the acts or practices stated to be unlawful he may bring an action in the name and on behalf of the people of the state of New York to enjoin such unlawful acts or practices and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts or practices.”
*389 Respondent argues that there is no evidence that consumers were misled by the language of the restrictive clause or that it deterred them from publishing their reviews and results of tests. The Attorney General need not first receive consumer complaints in order to commence a proceeding, but may proceed on his own initiative. (Management Transition Resources, 115 Misc 2d at 491.) The standard to be used to determine whether a representation is false and deceptive is not whether the actual practice is deceptive, but whether it has the capacity to deceive consumers. (Id.) The following are examples of conduct which New York courts have found to represent deceptive practices in violation of Executive Law § 63 (12) and General Business Law § 349: misleading authors into believing that their work has been selected for referral to an editing company because of its commercial potential, where instead authors were referred to the editing company only so that the editing company and agents could derive profits (People ex rel. Vacco v Appel, 258 AD2d 957 [4th Dept 1999]); mailing to prospective customers a card that creates an impression that it is from some type of a parcel delivery service, when the card, which does not identify the sender, is a solicitation for a free gift to be delivered by a salesperson devised to lure prospective customers into admitting the salesperson into their house (Matter of Lefkowitz v E.F.G. Baby Prods. Co., 40 AD2d 364 [3d Dept 1973]); representations by an employment agency that it had access to “hidden job market” and job orders for positions around the world, and that the agency arranged interviews for clients and had successfully placed hundreds of top-level executives and professionals, when in fact the agency received only one job order and utilized only readily available public information (Management Transition Resources, 115 Misc 2d 489 [1982]).
Respondent is correct in contending that the plain meaning of the language of the restrictive clause indicates that the rules and regulations referred to are the three rules listed immediately thereafter. Petitioner, however, argues that the clause clearly distinguishes between the license agreement containing contractual provisions, and listed rules and regulations. The language of the restrictive clause specifically directs consumers to read the license agreement. Because the license agreement contains a merger clause which states that all of the rights and duties of the parties are contained within that agreement, and does not contain any of the restrictions on publishing reviews and results of benchmark testing, consumers may conclude that those restrictions are not contractual *390 restrictions. Therefore, following respondent’s instructions, after reading the license agreement and the restrictive clause, consumers may reasonably interpret that the rules and regulations enumerated in the restrictive clause exist independently of the license contract and are made and enforced by an entity other than the corporation itself. This language implies that limitations on the publication of reviews do not reflect the policy of Network Associates, but result from some binding law or other rules and regulations imposed by an entity other than Network Associates. Thus, the Attorney General has made a showing that the language at issue may be deceptive, and as such, the language is not merely unenforceable, but warrants an injunction and the imposition of civil sanctions according to Executive Law § 63 (12) and General Business Law § 349.
Petitioner also seeks an imposition of penalties and accounting. Section 350-d of General Business Law provides, in part, that:
“[A]ny person, firm, corporation or association or agent or employee thereof who engages in any of the acts or practices stated in this article to be unlawful shall be liable to a civil penalty of not more than five hundred dollars for each violation, which shall accrue to the state of New York and may be recovered in a civil action brought by the attorney-general.”
Even though the Attorney General requests the imposition of a penalty in the amount of 500 for each instance of violation, as the number of violations is yet to be determined, the amount of penalties cannot be determined at this time. (See People v Allied Mktg. Group, 220 AD2d 370, 370 [1st Dept 1995].) Similarly, no costs, pursuant to CPLR 8303, may be awarded at this time.
Petitioner also seeks an injunction prohibiting Network Associates from including any language restricting the right to publish the results of testing and review without notifying the Attorney General at least 30 days prior to such inclusion. Respondent argues that such order would represent prior restraint on free speech. Respondent is incorrect in this contention, and this court grants the injunction.
Respondent also argues in conclusory fashion that it would be very costly and complicated to require respondent to remove the restrictive clause, which contains the deceptive language referring to “rules and regulations” that limit consumers’ rights to publish reviews and results of benchmark tests, that may be *391 contained in embedded files available for download from Network Associates’ Web site. As respondent gives no details as to the cost or the difficulty in removing the restrictive clause, this relief is granted.
Accordingly, it is hereby ordered that the motion by petitioner the People of the State of New York, by Eliot Spitzer, Attorney General of the State of New York, is granted, to the extent of permanently enjoining respondent Network Associates, Inc., doing business as McAfee Software, from distributing, advertising and selling its software which contains the following language:
“Installing this software constitutes acceptance of the terms and conditions of the license agreement in the box. Please read the license agreement before installation. Other rules and regulations of installing the software are:
“a. The product can not be rented, loaned, or leased — you are the sole owner of this product.
“b. The customer shall not disclose the result of any benchmark test to any third party without Network Associates’ prior written approval.
“c. The customer will not publish reviews of this product without prior consent from Network Associates, Inc.”;
and it further enjoined from including any language restricting the right to publish the results of testing and review without notifying the Attorney General at least 30 days prior to such inclusion, and is directed to provide a sworn certified statement indicating the number of instances in which software was sold on discs or through the Internet containing the above-mentioned language in order for the court to determine what, if any, penalties and costs should be ordered, and it is otherwise denied.